STATE OF NORTH CAROLINA v. CHRISTOPHER LUNORE ROSEBORO

No. 156A94-2

(Filed 5 May 2000)

**1. Jury— selection—capital sentencing—challenge for cause—failure to preserve issue**

The trial court did not err in a capital sentencing proceeding by failing to excuse for cause a prospective juror who expressed strong concerns that the court system was failing but also stated those opinions would not keep him from being fair and impartial, because although defendant's request for additional peremptory challenges was denied, he did not expressly renew his earlier challenge for cause of this juror as required by N.C.G.S. § 15A-1214(h).

**2. Jury— selection—capital sentencing—challenge for cause—failure to preserve issue**

The trial court did not err in a capital sentencing proceeding by failing to excuse for cause four prospective jurors who were allegedly tainted by the remarks of two pro-death penalty prospective jurors during voir dire because although defendant renewed his challenges to the jurors at a later time, he failed to renew them at a time when he had exhausted his peremptory challenges and failed to renew each of his previously denied challenges for cause as required by N.C.G.S. § 15A-1214(h).

3. **Criminal Law— prosecutor's argument—capital sentencing—accomplice's life sentence—opposition to catchall mitigating circumstance**

The prosecutor did not improperly imply in his closing argument in a capital sentencing proceeding that an accomplice's life sentence for the same murder could be treated as a nonstatutory aggravating circumstance because he properly argued in opposition to the "cathchall" mitigating circumstance that the jury should not give any mitigating value to the fact that the accomplice was not sentenced to death.

4. **Sentencing— peremptory instructions—statutory mitigating circumstances—controverted evidence**

The trial court did not err in a capital sentencing proceeding by failing to give a peremptory instruction on the N.C.G.S. § 15A-2000(f)(6) mitigating circumstance, that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, because the record contains conflicting evidence, including: (1) defendant did not intimate in his testimony that he did not know what he was doing or that he could not stop himself even though he was under the influence of crack cocaine the night of the murder; (2) defendant's accomplice testified that defendant motioned for the accomplice to be quiet when defendant was walking towards the sleeping victim's bedroom; and (3) although an expert testified he diagnosed defendant with three mental disorders and opined these disorders impaired his ability to appreciate the criminality of his conduct and conform his conduct to the law, the expert agreed with the evaluation report from Dorothea Dix Hospital suggesting there were no positive findings of any information suggestive of particular impairment during the time specific to the alleged crimes.

5. **Sentencing— capital—peremptory instructions—statutory mitigating circumstances—controverted evidence**

The trial court did not err in a capital sentencing proceeding by failing to give a peremptory instruction on the N.C.G.S. § 15A-2000(f)(4) mitigating circumstance, that defendant was an accomplice in or accessory to the capital felony committed by another person and his participation was relatively minor, because there is conflicting evidence, including: (1) the record discloses no evidence from which the jury could have found

STATE v. ROSEBORO

[351 N.C. 536 (2000)]

defendant guilty of premeditated murder of the victim without finding he actually killed her; (2) defendant's accomplice testified that he went into the victim's apartment on more than one occasion to steal various items but never entered the victim's bedroom, and no forensic evidence suggested the accomplice entered the victim's bedroom; (3) defendant admitted he went into the victim's bedroom and raped her, even though he contends she was already dead when he raped her; and (4) once a jury has found a defendant guilty of first-degree murder at trial, it is inappropriate to focus on anything other than defendant's character or record and any circumstance of the offense.

**6. Sentencing— capital—mitigating circumstance—levels of security at prison—irrelevant to show defendant adjusted to prison**

The trial court did not err in a capital sentencing proceeding by excluding evidence regarding the levels of security at Central Prison to support the nonstatutory mitigating circumstance, that defendant has adjusted well to the structured environment presented by Central Prison, because: (1) evidence of the different levels of security in the prison is irrelevant to show defendant's character, prior record, or circumstances of the offense; and (2) defendant was not precluded from adducing testimony from a program director at the prison about defendant's good behavior, adjustment, and freedom of movement within the prison.

**7. Sentencing— capital—requested instructions—nonstatutory mitigating circumstances—controverted evidence**

The trial court did not err in a capital sentencing proceeding by failing to give an instruction on the nonstatutory mitigating circumstance that defendant's criminal conduct was the result of circumstances unlikely to recur because: (1) defendant was not able to explain how the victim's murder occurred; (2) defendant has maintained throughout that his accomplice killed the victim before defendant raped her; (3) without knowing the circumstances that led to defendant's conduct and the victim's murder, a jury could not determine how likely such circumstances were to recur; (4) an expert testified that the combination of defendant's three psychological disorders made it hard to give an opinion without being speculative about how defendant might behave when in the presence of someone who might initiate criminal activity; and (5) the proposed circumstance is subsumed in the other mitigating circumstances submitted to the jury.

**8. Evidence— cross-examination—character witnesses—allegations of violence—specific instances**

The trial court did not commit plain error in a capital sentencing proceeding by failing to intervene ex mero motu and allowing cross-examination of defendant's character witnesses about allegations of violence by defendant against his wife because: (1) defendant placed his character at issue and the prosecutor thereafter was allowed to cross-examine under N.C.G.S. § 8C-1, Rule 405(a) about specific instances of defendant's misconduct in the context of his marriage; and (2) the prosecutor's questions to the witnesses about whether defendant had been "accused" or "charged" with hitting his wife were intended to address the witnesses' knowledge of defendant's acts of violence against his wife rather than his criminal record.

**9. Sentencing— capital—requested instructions—racial considerations in sentencing**

The trial court did not err in a capital sentencing proceeding by denying defendant's request for a jury instruction that the race of defendant and the victim should not be considered in the jury's sentencing recommendation because: (1) the same due process considerations that require the trial court to allow voir dire of prospective jurors about racial attitudes in capital cases does not also entitle defendant to a jury instruction about the need to disregard racial considerations in sentencing; and (2) the requested instruction in this case would have, in effect, injected racial bias into the jurors' consideration of defendant's sentence and diverted their attention away from the more pertinent issues of defendant's character and the circumstances of the crime.

**10. Sentencing— capital—requested instructions—mitigating circumstances—mental impairments—combined instruction**

The trial court did not err in a capital sentencing proceeding by denying defendant's request for separate instructions on each of his three alleged mental impairments (personality disorder, impaired intellectual functioning, and chronic substance dependence) and by giving a single instruction combining each of the mental impairments into a single mitigating circumstance because the trial court's instruction specifically referred to each of defendant's alleged mental disorders and instructed the jury to consider whether one or all of his mental disorders impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

**11. Sentencing— capital—aggravating circumstances—evidence overlapping—considered separately**

The trial court did not commit plain error in a capital sentencing proceeding by instructing the jury that it could consider as separate aggravating circumstances whether the murder was committed in the course of a burglary and whether the murder was committed in the course of a rape as set forth in N.C.G.S. § 15A-2000(e)(5) because where there is separate substantial evidence to support each aggravating circumstance, it is not improper for each aggravating circumstance to be submitted even though the evidence supporting each may overlap.

**12. Sentencing— capital—death penalty not disproportionate**

The trial court did not err by imposing the death sentence for first-degree murder because: (1) the jury found the two submitted aggravating circumstances under N.C.G.S. § 15A-2000(e)(5) that the murder was committed while defendant was engaged in the commission of burglary, and the murder was committed while defendant was engaged in the commission of rape; (2) a death sentence has never been found to be disproportionate in North Carolina where a victim of first-degree murder was also sexually assaulted; (3) defendant was convicted of both felony murder and premeditated and deliberate murder; and (4) defendant sexually assaulted an elderly woman while she was dead or in her "last breath of life" in her home in her own bed.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Patti, J., on 29 August 1997 in Superior Court, Gaston County, upon defendant's conviction of first-degree murder. Heard in the Supreme Court 15 September 1999.

*Michael F. Easley, Attorney General, by Thomas J. Ziko, Special Deputy Attorney General, and John Barnwell, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance Everhart Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant Christopher Lunore Roseboro was indicted for one count each of first-degree murder, first-degree rape, and larceny from

the person, and for three counts each of first-degree burglary, felonious larceny, and felonious possession of stolen goods. He was tried at the 28 February 1994 Criminal Session of Superior Court, Gaston County. Defendant was found guilty of first-degree murder on the basis of both premeditation and deliberation and felony murder; he was also convicted of first-degree burglary, first-degree rape, felonious larceny, and possession of stolen property. Following a capital sentencing proceeding, the jury recommended the death sentence for the first-degree murder, and the trial court sentenced defendant accordingly. The trial court also sentenced defendant to consecutive terms of life imprisonment for first-degree rape, fourteen years of imprisonment for first-degree burglary, and three years of imprisonment for felonious larceny. The trial court arrested judgment for the conviction of possession of stolen property. On appeal, this Court affirmed the convictions but granted defendant a new capital sentencing proceeding based on error in the jury instructions at the initial sentencing proceeding. *State v. Roseboro*, 344 N.C. 364, 474 S.E.2d 314 (1996). At defendant's second capital sentencing proceeding, the jury again recommended the death sentence for the first-degree murder conviction, and the trial court sentenced defendant pursuant to the recommendation.

On appeal to this Court, defendant brings forward fifty-eight assignments of error. For the reasons stated herein, we conclude that defendant's capital sentencing proceeding was free of prejudicial error and that the death sentence is not disproportionate.

The State's evidence at the resentencing proceeding tended to show the following. Defendant lived with Roger Bell in a one-bedroom apartment on West Second Avenue in Gastonia next to seventy-two-year-old Martha Edwards. Bell testified that on the night of 13 March 1992, he climbed through the window of the victim's ground-floor apartment, stole two vases and a telephone, and took them back to the apartment. On the second trip back to the victim's apartment, Bell heard snoring and discovered someone sleeping in the bedroom. Thinking no one was at home, Bell became unnerved and left through the kitchen door. At the apartment Bell then told defendant about what had happened. They both decided to return to the victim's apartment to take the floor-model television set that Bell had previously seen. They entered the victim's apartment through the kitchen door and carried the television back to their apartment.

Defendant and Bell returned to the victim's apartment to wipe away any fingerprints that they might have left. Noticing defendant

walking toward the victim's bedroom, Bell told defendant that they needed to leave. Defendant motioned for Bell to remain quiet. Bell then returned to his and defendant's apartment, leaving defendant in Ms. Edwards' apartment. Bell did not see defendant again until the next morning.

Defendant's testimony from his 1994 trial was read into evidence at his resentencing proceeding. Defendant had testified that on the night of the murder, he had smoked crack cocaine and then had fallen asleep. He awoke to find Bell carrying two vases and a telephone into the apartment. Bell left again and returned the second time with a microwave oven and a radio. Bell left again and returned the third time with a pocketbook and silverware. While Bell was gone that third time, defendant smoked more crack cocaine. Bell emptied the contents of the pocketbook and gave defendant a twenty-dollar bill that was in the purse. They then walked to Cherry Street so that defendant could buy more cocaine. In route to Cherry Street, Bell threw the pocketbook into the back of a truck.

Defendant agreed to return to the victim's apartment to help Bell take out the floor-model television. Defendant asked about the woman who was asleep, and Bell responded that he had smothered her. They then went back to the victim's apartment, and defendant went into the victim's bedroom. He saw a pillow on the victim's face and checked to see if she was dead. Observing no movement, defendant then removed the victim's underwear and raped her. Defendant maintained that at the time he raped the victim, she was already dead. Defendant claimed that he was not thinking; that he was "real high" and "paranoid"; and that "something just came over me."

The pathologist who performed the autopsy on the victim's body testified that the lacerations in the vagina showed that she had been sexually assaulted. The pathologist opined that based on the bruises on her face and the fluid in her lungs, the victim had been suffocated. Further, based on the small amount of blood around the vaginal area, the victim was either dying or dead at the time she was raped. The male DNA fractions found in the fluid taken from the victim's vagina matched defendant's DNA. The probability of another, unrelated individual having the same DNA is approximately one in 3.5 billion in the North Carolina black population.

Defendant presented evidence from his sister, his brother, and two cousins, who all claimed that defendant was not a violent person. Defendant's sister testified that defendant's father was ab-

sent during his childhood; that defendant had a good relationship with the grandparents who raised him; and that defendant's wife introduced him to drugs. Defendant's brother and first cousin testified that defendant always worked but that he simply associated with the wrong crowd.

Defense counsel read into evidence the prior testimony of Charles "Peanut" Dameron, who had known defendant since 1976 when they lived in the same area. Dameron had testified in the 1994 trial that on the morning of 14 March 1992, both Bell and defendant made statements to him: Bell told him that he had broken into the apartment and had stolen items. Defendant told him that he had not killed the victim and that Bell had killed her. This testimony was in accord with the statement that Dameron made to Detective Hawkins on 16 March 1992.

Dr. William M. Tyson, an expert in clinical and forensic psychology, testified that he evaluated defendant and found substantial evidence of borderline intelligence functioning, a personality disorder, and chronic substance dependence disorder. Dr. Tyson concluded that the combination of these psychological problems would have reduced defendant to acting on impulse with a limited ability to plan, reason, understand, and appreciate the consequences of his actions at the time of the offense. However, Dr. Tyson admitted that these three disorders did not eliminate defendant's responsibility for the offense; he believed that defendant knew what he was doing. Dr. Tyson also admitted that defendant's evaluation report from Dorothea Dix indicated that he had a history of physical abuse of his wife and that he admitted hitting her.

Benny Mack, a program director in Central Prison, testified that defendant had spoken to a young man on probation in the Think Smart program and had told him to be more respectful of adults and that defendant had always been courteous and respectful. Harold Williams, a staff psychologist at Central Prison, testified that defendant participated in group counseling sessions and was learning to accept some responsibility for his actions. George Denard, a case worker in the programs division at Central Prison, opined that defendant was not as bad as some of the younger inmates in that he is more respectful. Randall Spear, a clinical chaplain at Central Prison, testified that defendant participated in the choir and was involved in other religious activities in the prison. A former inmate testified that defendant got along with many of the inmates.

STATE v. ROSEBORO

[351 N.C. 536 (2000)]

## JURY SELECTION

**[1]** By one assignment of error, defendant contends that the trial court denied his rights to a fair and impartial jury and a reliable sentencing hearing under both the North Carolina Constitution and the United States Constitution by erroneously failing to excuse for cause prospective juror Harold Smith. Although juror Smith expressed strong concerns that the court system was failing, he felt that his opinions about the court system would not keep him from being fair and impartial. Since defendant had to use a peremptory challenge to remove juror Smith, defendant contends that he was denied his statutory right to fourteen peremptory challenges. At a subsequent point in the jury selection but before the full panel was selected, defendant exhausted his peremptory challenges. Defendant's request for additional peremptory challenges was denied. When this request was denied, defendant announced that he was satisfied with the last seated juror. Defendant did not expressly renew his earlier challenge for cause to juror Smith.

Defendant concedes that he did not comply with the requirements of N.C.G.S. § 15A-1214(h) for preserving this issue for appellate review. Nevertheless, defendant asserts that he sufficiently complied with the spirit of the statute to warrant review. Defendant submits that he clearly signaled to the trial court by his request for additional peremptory challenges during the questioning of the last juror that he desired to excuse juror Smith and that his declaration of satisfaction was not an indication of satisfaction with the panel but rather an indication of having no peremptory challenges remaining. We disagree.

N.C.G.S. § 15A-1214(h) prescribes the only method of preserving for appellate review a denial of a challenge for cause. Counsel must first have exhausted his peremptory challenges, must have renewed for cause as to each prospective juror whose previous challenge for cause had been denied, and must have had his renewed motion denied as to the juror in question. *See State v. Ball*, 344 N.C. 290, 304, 474 S.E.2d 345, 353 (1996), *cert. denied*, 520 U.S. 1180, 137 L. Ed. 2d 561 (1997). Defendant failed to follow this mandatory statutory procedure to preserve for appellate review his exception to the ruling on his challenge for cause and is not entitled to relief. We overrule this assignment of error.

**[2]** In his next assignment of error, defendant contends that the trial court denied his constitutional rights to a fair and impartial jury and

a fair sentencing hearing by failing to excuse for cause four prospective jurors who were tainted by the remarks of pro-death penalty prospective jurors Bobby Baker and Robert Pearson during *voir dire*. We disagree. The trial court informed the prospective jurors that the penalty of life imprisonment means a term of imprisonment for life. Prospective juror Baker was excused for cause after he stated that he would vote for the death penalty to ensure that justice was upheld. The State then expressed satisfaction with the remaining prospective jurors, including juror Pearson, who expressed concerns about convictions being overturned on appeal.

Defendant moved to strike the remainder of the panel on the basis of these remarks of prospective jurors Baker and Pearson. The trial court denied the motion, noting that it had properly instructed the jury as required by this Court. Defendant then used peremptory challenges to remove each of these four prospective jurors whom he considered to be tainted by these remarks. Defendant renewed this motion and also requested and was allowed an additional peremptory challenge. After exhausting his peremptory challenges, defendant again requested additional peremptory challenges, which the trial court denied.

As noted in the previous assignment of error, defendant failed to properly preserve for appellate review his exception to the trial court's denial of his challenges for cause to any juror. N.C.G.S. § 15A-1214(h) (1997). Although defendant renewed his challenges to the jurors at a later time, he failed to renew them at a time when he had exhausted his peremptory challenges and failed to renew each of his previously denied challenges for cause. *Ball*, 344 N.C. at 304, 474 S.E.2d at 353. Accordingly, we overrule this assignment of error.

## SENTENCING

[3] In his next assignment of error, defendant contends that his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution were violated when the prosecutor during closing argument improperly encouraged the jury to consider the sentences of defendant's accomplice, Roger Bell, in determining the proper sentence to be imposed on defendant. Defendant submits that he was denied a fair trial by the trial court's failure to intervene *ex mero motu* and admonish the prosecutor, instruct the jury, or otherwise cure the prejudice. We disagree.

Roger Bell testified for the prosecution, and in the course of his testimony admitted that he was currently serving three consecutive life sentences for convictions relating to the burglary and murder of Ms. Edwards. Defense counsel later stipulated during defendant's presentation of the evidence that defendant had been convicted in March 1994 of first-degree murder, first-degree rape, first-degree burglary, and felonious larceny and that he had received consecutive sentences of life plus seventeen years for the noncapital offenses. During closing argument, the prosecutor addressed each of defendant's proffered mitigating circumstances and offered reasons to reject them. One of those mitigating circumstances was the "catchall" mitigating circumstance: "Any other circumstance arising from the evidence which the jury deems to have mitigating value." N.C.G.S. § 15A-2000(f)(9) (1997). Addressing the "catchall" mitigating circumstance, the prosecutor stated:

> But, ladies and gentlemen, there is not any mitigating circumstance that they argue about Roger Bell's sentence. He has got life plus life plus life. How is that mitigating for Mr. Bell? Excuse me. Toward Mr. Roseboro whereas if he gets life in this case? And they told you what his sentences in the other cases were. If he gets life in this case, then he has life plus life plus fourteen plus three. Less time than Mr. Bell. So how is Mr. Bell's sentence a mitigating? It is not.

Defendant did not object to this argument at the time. When a defendant fails to object to an allegedly improper closing argument, the standard of review is whether the argument was so grossly improper that the trial court erred in failing to intervene *ex mero motu*. *See State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 80, (1999). In a capital trial, the prosecutor is given wide latitude during jury arguments, *see State v. Warren*, 348 N.C. 80, 124, 499 S.E.2d 431, 456, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998), and has a duty to vigorously present arguments for the sentence of death using every legitimate method. *See State v. Daniels*, 337 N.C. 243, 277, 446 S.E.2d 298, 319 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995).

Evidence of a co-defendant's sentence is not relevant to a defendant's character or record or to the circumstances of the killing; hence, such evidence is not relevant to show a mitigating circumstance. *See State v. Sidden*, 347 N.C. 218, 231, 491 S.E.2d 225, 232 (1997), *cert. denied*, 523 U.S. 1097, 140 L. Ed. 2d 297 (1998). This Court has, how-

ever, recognized that the jury may consider an accomplice's sentence as a mitigating circumstance under the "catchall" instruction. *See State v. Williams*, 305 N.C. 656, 687, 292 S.E.2d 243, 262, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982); *see also* N.C.G.S. § 15A-2000(f)(9). With respect to the "catchall" mitigating circumstance, the jury here was instructed: "Finally, you may consider any other circumstance or circumstances arising from the evidence which you deem to have mitigating value." Therefore, the prosecution could properly argue in opposition to the "catchall" mitigating circumstance that the jury should not give any mitigating value to the fact that Bell was not sentenced to death. The prosecution did not imply, as defendant argues, that Bell's sentence could be treated as a nonstatutory aggravating circumstance. The argument did not warrant the trial court's intervention *ex mero motu*, and we overrule this assignment of error.

[4] In another assignment of error, defendant contends that the trial court violated his Eighth and Fourteenth Amendment rights by refusing to give a peremptory instruction on the statutory mitigating circumstance that "the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired" at the time of the offense. *See* N.C.G.S. § 15A-2000(f)(6). Defendant claims that this circumstance was supported by uncontroverted and credible evidence. We disagree.

A defendant is entitled, upon request, to a peremptory instruction on a statutory mitigating circumstance when the evidence supporting the circumstance is uncontroverted. *See State v. Simpson*, 341 N.C. 316, 344, 462 S.E.2d 191, 207 (1995), *cert. denied*, 516 U.S. 1161, 134 L. Ed. 2d 194 (1996). A review of the record reveals that all the evidence did not support this mitigating circumstance. Defendant's testimony at his 1994 trial was read into evidence at this capital resentencing proceeding. Despite the fact that defendant was under the influence of crack cocaine on the night of the murder, he did not intimate in his testimony that he did not know what he was doing or that he could not stop himself. Defendant testified that when Bell returned from his second trip to the victim's apartment with more stolen items, defendant asked, "For you to be getting all this stuff, . . . where are these people at?" Bell first told defendant that the woman was asleep; and defendant replied, "Can't nobody sleep that hard and don't hear nobody go in their house." Once inside the victim's apartment, defendant asked again, "I don't hear nobody around. . . . Where is the people at?" When Bell and defendant went

back to the apartment later, defendant entered the victim's bedroom. He said that while he was in her bedroom, "Something just came over me. I don't know what it was. And, like I say, I committed a sex act with the woman." Further, Bell testified at the resentencing hearing that when defendant was walking down the hall toward Ms. Edwards' bedroom, he motioned for Bell to remain quiet.

In addition, Dr. Tyson, an expert in psychology, testified that he diagnosed defendant with three mental disorders and opined that these disorders impaired defendant's ability to appreciate the criminality of his conduct and conform his conduct to the law. However, Dr. Tyson did agree with defendant's evaluation report from Dorothea Dix indicating "no positive findings of any information suggestive of particular impairment during the time specific to the alleged crimes."

The record thus discloses conflicting evidence concerning whether defendant's ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. "[A] peremptory instruction is inappropriate when the evidence surrounding that issue is conflicting." *State v. Noland*, 312 N.C. 1, 20, 320 S.E.2d 642, 654 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985). Therefore, the trial court did not err by denying defendant's motion for a peremptory instruction on this mitigating circumstance. We overrule this assignment of error.

**[5]** In another assignment of error, defendant contends that the trial court erred in failing to submit for the jury's consideration the statutory mitigating circumstance that "defendant was an accomplice in or accessory to the capital felony committed by another person and his participation was relatively minor." N.C.G.S. § 15A-2000(f)(4). Defendant asserts that evidence was presented from which the jury could have found the existence of the (f)(4) mitigating circumstance and that the failure to submit this mitigating circumstance violated his right to due process and to be free from cruel and unusual punishment. We disagree.

After considering all the evidence, the jury in the guilt-innocence phase of defendant's 1994 trial found him guilty of premeditated and deliberate murder. The record discloses no evidence from which the jury could have found defendant guilty of premeditated murder of Ms. Edwards without finding that he actually killed her. Bell testified that he entered the victim's apartment on more than one occasion to steal various items but never entered the victim's bedroom, and no

forensic evidence suggested that Bell had been in the victim's bedroom. Conversely, defendant testified that Bell had told him that he, Bell, had killed the victim. Defendant admitted that he entered the victim's bedroom and raped her; this statement is consistent with the forensic evidence. Defendant maintained that the victim was already dead when he raped her; the pathologist opined that, in light of the small amount of vaginal bleeding, the victim was either dead or "in the last breath of life" when she was raped. The evidence demonstrates either that Bell killed the victim and defendant raped her afterwards or that defendant both killed and raped the victim. Accordingly, the trial court did not instruct the jury that it could find defendant guilty of premeditated and deliberate murder on a theory of aiding and abetting.

Defendant concedes that his conviction of first-degree murder cannot be relitigated for purposes of determining guilt or innocence. However, defendant submits that the jury's factual findings underlying the determination that defendant was guilty of first-degree murder at the guilt-phase does not preclude the resentencing jury from relitigating any of the facts underlying the conviction for purposes of determining the existence of the (f)(4) mitigating circumstance, which might be favorable to him. Under the guise of the (f)(4) mitigating circumstance, defendant is essentially seeking to retry the question of guilt, that is, whether he had a sufficiently culpable state of mind at the time of the murder. We have held that once a jury has found a defendant guilty of first-degree murder at trial, it is inappropriate for the sentencing jury to focus on anything other than the defendant's character or record and any circumstance of the offense. See State v. Walls, 342 N.C. 1, 52-53, 463 S.E.2d 738, 765 (1995), cert. denied, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). We have recognized that the defendant's character or record and the circumstances of the offense do not encompass "[l]ingering or residual doubt" of defendant's guilt. State v. Hill, 331 N.C. 387, 415, 417 S.E.2d 765, 779 (1992), cert. denied, 507 U.S. 924, 122 L. Ed. 2d 684, (1993). "Therefore, residual doubt is not a relevant circumstance to be submitted in a capital sentencing proceeding." Id.

Furthermore, this Court has held that once a jury has convicted a defendant of first-degree murder on a theory of premeditated and deliberate murder, at the sentencing proceeding the trial court does not need to instruct the jury to make a factual finding of the defendant's state of mind at the time of the murder. See State v. Robinson, 342 N.C. 74, 88, 463 S.E.2d 218, 226 (1995), cert. denied, 517 U.S. 1197,

134 L. Ed. 2d 793 (1996). The trial jury in this case found defendant guilty of premeditated and deliberate murder. The evidence before the sentencing jury failed to support a finding that defendant was an accomplice in or accessory to a capital felony committed by another person, but it also failed to support a finding that defendant's participation was relatively minor. Accordingly, the trial court did not err in failing to submit the (f)(4) mitigating circumstance; and this assignment of error is without merit.

[6] In the next assignment of error, defendant contends that the trial court erred in violation of defendant's Eighth and Fourteenth Amendment rights by excluding evidence regarding the levels of security at Central Prison to support the nonstatutory mitigating circumstance that "[d]efendant has adjusted well to the structured environment presented by Central Prison." We disagree. During the presentation of defendant's evidence, Benny Mack, a program director at Central Prison, gave a favorable opinion of defendant. On redirect examination, defendant asked Mack to define the "maximum security prison" and to describe the different levels of security within the prison system. At that point, the trial court excused the jury and asked defense counsel about the relevance of this inquiry. Mack then described the different levels of security, the corresponding population in each level, and the different degrees of supervision in each level. Following this testimony, the trial court ruled:

> If you want to ask the witness in front of the jury if he is working, if Mr. Roseboro is working, if he is doing good deeds, you can ask him all those questions, but the jury just doesn't need to know the different levels of security.

In *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), the United States Supreme Court established that a jury in a capital case cannot "be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604, 57 L. Ed. 2d at 990; *see* N.C.G.S. § 15A-2000(a)(3). The United States Supreme Court has also held that evidence of a defendant's ability to adjust to prison life is relevant to a jury's sentencing recommendation and that a defendant is entitled to present evidence concerning his conduct and ability to adjust in prison. *Skipper v. South Carolina*, 476 U.S. 1, 4-5, 90 L. Ed. 2d 1, 6-7 (1986). Nonetheless, the trial court has the authority "to exclude, as irrelevant, evidence not bearing on the defendant's character, prior

record, or the circumstances of his offense." *Lockett*, 438 U.S. at 604 n.12, 57 L. Ed. 2d at 990 n.12.

Here, evidence as to the different levels of security in the prison is irrelevant to show defendant's character, prior record, or circumstances of the offense. Defendant argues that the trial court, in excluding the evidence, prevented him from showing that he was not considered by the prison staff to be dangerous or to require special supervision. However, the court's ruling did not preclude defendant from adducing testimony from Mack about defendant's good behavior, adjustment, and freedom of movement within the prison. The trial court ruled only that defendant could not present testimony about the levels of security at the prison since it was not pertinent to defendant. Thus, the trial court did not abuse its discretion; and this assignment of error is overruled.

[7] In another assignment of error, defendant contends that the trial court erred by refusing his request to submit for the jury's consideration the nonstatutory mitigating circumstance that defendant's criminal conduct was the result of circumstances unlikely to recur. Defendant claims that all the evidence demonstrates that the victim's death arose out of an unusual combination of events that are not likely to be duplicated in the future, namely, Bell's conduct which led defendant into the victim's home. We do not agree.

In order to succeed on the claim that the trial court erred by refusing to submit a mitigating circumstance for the jury's consideration, defendant must show that "(1) the nonstatutory mitigating circumstance is one which the jury could reasonably find had mitigating value, and (2) there is sufficient evidence of the existence of the circumstance to require it to be submitted to the jury." *State v. Benson*, 323 N.C. 318, 325, 372 S.E.2d 517, 521 (1988). A review of the record reveals that the evidence does not support the circumstance that defendant's criminal conduct was the result of circumstances unlikely to recur. To the contrary, defendant was not able to explain how the victim's murder occurred. Defendant has maintained throughout that Bell killed the victim before defendant raped her. Without knowing the circumstances that led to defendant's conduct and the victim's murder, a jury could not determine how likely such circumstances were to recur.

Dr. Tyson, defendant's expert psychologist, testified that defendant suffered from three psychological disorders: a personality disorder, borderline intellectual functioning, and chronic substance

dependence. Dr. Tyson opined that the combination of all three of these psychological disorders contributed to the defendant's impulsiveness. Dr. Tyson also testified that "[i]t would be very hard to give an opinion without being speculative" about how defendant with these three psychological disorders "might behave when in the presence of someone who might initiate criminal activity." Thus, to conclude that defendant would not commit a similar crime under similar circumstances in the future would be speculation.

Further, the refusal of the trial court to submit the proposed mitigating circumstance is not error when the proposed circumstance is subsumed in the other mitigating circumstances submitted to the jury. *Benson*, 323 N.C. at 327, 372 S.E.2d at 521-22. In addition to finding that the proposed mitigating circumstance was not supported by the evidence, the trial court also rejected the circumstance on the basis that it was subsumed in another mitigating circumstance to be submitted to the jury, namely, "But for the initial unilateral act of burglary committed by Roger Bell, this series of events which ultimately resulted in the Defendant's commission of the crimes for which he has been convicted would probably not have occurred." Defendant argues that each of the two circumstances has a different focus and rests on independent evidence. We disagree. Both circumstances involve Bell setting in motion a series of events that led to the victim's death. Thus, the trial court properly determined that the proposed mitigating circumstance was subsumed in another mitigating circumstance to be submitted to the jury. We overrule this assignment of error.

[8] In another assignment of error, defendant contends that the trial court committed plain error when it failed to intervene *ex mero motu* and allowed cross-examination of defendant's character witnesses about allegations of violence by defendant against his wife. We disagree. On direct examination, defendant called three members of his family who testified either that defendant was not a violent person or that they had never known him to be violent. On cross-examination, the prosecutor questioned each witness about his or her knowledge of defendant's violent behavior toward his wife. Two of the three witnesses admitted that they had heard that defendant had hit his wife.

Defendant did not object to any of the prosecutor's questions at that time. Having failed to object, defendant is entitled to relief based on this assignment of error only if he can demonstrate plain error.

**STATE v. ROSEBORO**

[351 N.C. 536 (2000)]

"Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *See State v. Jordan,* 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

A criminal defendant is entitled to introduce evidence of his good character, thereby placing his character at issue. The State in rebuttal can then introduce evidence of defendant's bad character. *See State v. Gappins,* 320 N.C. 64, 69, 357 S.E.2d 654, 658 (1987). Such evidence offered by the defendant or the prosecution in rebuttal must be "a pertinent trait of his character." N.C.G.S. § 8C-1, Rule 404(a)(1) (1999). Rule 405(a) provides in pertinent part:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

N.C.G.S. § 8C-1, Rule 405(a) (1999). Defendant placed his character at issue by having members of his family testify about his reputation for nonviolence or peacefulness, "a pertinent trait of his character." In accordance with Rule 405(a), the prosecutor then cross-examined these witnesses about whether they knew of or had heard any accusations that defendant had hit or been violent toward his wife.

Defendant argues that the prosecutor failed to limit his inquiry only to specific instances of misconduct by defendant by asking very general questions about whether the witnesses knew about any "violence in the marriage" or "allegations" of violence. Given that defendant's character witnesses testified that defendant was not a violent person, the prosecution was entitled to probe their knowledge of defendant's violence in his marriage. Such an inquiry was directed at specific instances of defendant's misconduct in the context of his marriage, not just general charges of violent behavior. On this basis, defendant's argument that the prosecutor elicited irrelevant information concerning problems in defendant's marriage is without merit.

Defendant also argues that the trial court should not have allowed the prosecution to ask the character witnesses whether defendant had been "accused" of or "charged" with hitting his wife. One of the passages cited by defendant is as follows:

Q. You indicated that you had never known Chris [defendant] to be violent?

A. No.

Q. Had you heard any accusations from Laurie [wife] about him being violent during their marriage?

A. One time.

Q. One time? Do you know if Laurie ever had him charged with being violent toward her, any kind of criminal action?

A. One time that I know of.

Q. One time? He was married to Laurie for eight years. How long did he live with Laurie?

A. I think up until maybe six months before he got in trouble, these charges was brought against him.

Defendant relies on *State v. Martin*, 322 N.C. 229, 367 S.E.2d 618 (1988), in which we held that it was error to allow the prosecution to cross-examine a character witness about whether he knew that the defendant had been charged with a crime. "The fact that the defendant had been charged with a crime does not show he is guilty of the crime." *Id.* at 238, 367 S.E.2d at 623. However, *Martin* is distinguishable. Notwithstanding the prosecution's choice of words, the questions in this case were intended to address the witness' knowledge of defendant's acts of violence against his wife rather than his criminal record, as in *Martin*. In *Martin*, the question was based entirely on the fact that the defendant had been charged with selling marijuana in jail. *Id.* at 237, 367 S.E.2d at 623. Here, the prosecution's questions were based on evidence from the prior trial: a witness' testimony that defendant's wife had told him about defendant hitting her and defendant's evaluation report from Dorothea Dix which stated that defendant admitted hitting his wife.

We conclude that the prosecutor's questions were not improper cross-examination and that allowing the witness to answer was not error, much less plain error. Defendant is not entitled to relief, and this assignment of error is overruled.

[9] In the next assignment of error, defendant contends that the trial court committed constitutional error by denying defendant's request for a jury instruction that the race of defendant and the victim should

not be considered in the jury's sentencing recommendation. We disagree. Defendant's proposed jury instruction was as follows:

> MEMBERS OF THE JURY, I instruct you that you may *not* consider the race of the Defendant or that of the victim in making your determination about whether death or life imprisonment is the appropriate punishment for the Defendant. Because of the range of discretion that will be entrusted to you, there is a unique opportunity for racial prejudice to operate in this case. It remains an unfortunate fact in our society that racial prejudice can improperly influence a jury. Even subtle, less conscious racial attitudes must be eliminated by you from your consideration of the appropriate sentence in this case. It would be a violation of your oaths and you[r] duty under the laws of the United States and the State of North Carolina for you to give any consideration whatsoever to racial factors in reaching your decision in this case.

In *Turner v. Murray*, 476 U.S. 28, 90 L. Ed. 2d 27 (1986), the United States Supreme Court held that, upon request, "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Id.* at 36-37, 90 L. Ed. 2d at 37. Defendant argues that the same due process considerations that require the trial court to allow *voir dire* of prospective jurors about racial attitudes in capital cases also entitled defendant to a jury instruction about the need to disregard racial considerations in sentencing. Rejecting a similar argument in *State v. Richardson*, 342 N.C. 772, 467 S.E.2d 685, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996), we noted that "*Turner* is not authority for the proposition that a trial court in the trial of an interracial crime must instruct the jury to disregard racial considerations where defendant requests such an instruction." *Id.* at 792, 467 S.E.2d at 696.

Given this precedent, the trial court was not required to instruct the jurors that they should avoid giving any consideration to racial factors in defendant's sentencing. Contrary to defendant's position, the instruction in this case would have, in effect, injected racial bias into the jurors' consideration of defendant's sentence and diverted their attention away from the more pertinent issues of defendant's character and the circumstances of the crime. Therefore, we conclude that the trial court did not err in refusing to give the requested instruction. We overrule this assignment of error.

**[10]** In another assignment of error, defendant contends that the trial court erred by denying defendant's request for separate instructions on each of defendant's alleged mental impairments and by giving a single instruction combining all of the mental impairments into a single mitigating circumstance. Defendant argues that the trial court's failure to instruct on the three separate mitigating circumstances impinged on the jury's full consideration of the mitigating evidence in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution. Defendant also disputes the trial court's instruction on the ground that it limited the jury's consideration to the evidence that defendant "used crack cocaine before the killing," ignoring defendant's chronic cocaine dependence. He contends that the instruction improperly limited the scope of the circumstance. We disagree.

Dr. Tyson testified that defendant suffered from three psychological disorders: personality disorder, impaired intellectual functioning, and chronic substance dependence. Dr. Tyson opined that these disorders "potentiat[ed]" each other, limited defendant's "ability to function as an adult, to think through his behavior, make decisions with any appreciation of the future." Both Bell and defendant testified that defendant was using crack cocaine on the night of the murder. Based on this evidence, defendant requested three separate mitigating circumstances under N.C.G.S. § 15A-2000(f)(6) each of which instructed that "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired" by one of the following: defendant's "personality disorder," "borderline range of intelligence," and "long-term, chronic and severe abuse of crack-cocaine at and around the time of the offenses." The trial court rejected defendant's request and subsequently combined all of defendant's allegedly impairing mental conditions into the single (f)(6) mitigating circumstance. The trial court instructed in pertinent part as follows:

> You would find this mitigating circumstance if you find that the Defendant suffered from a personality disorder and/or had a borderline range of intelligence and/or used crack cocaine before the killing and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

The trial court's instruction specifically referred to each of defendant's alleged mental disorders and instructed the jury to con-

sider whether one or all of defendant's mental disorders impaired defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Defendant was not prohibited from presenting evidence on each of these disorders and had ample opportunity to argue the weight of that evidence to the jury. *See State v. McLaughlin*, 341 N.C. 426, 452, 462 S.E.2d 1, 15 (1995), *cert. denied*, 516 U.S. 1133, 133 L. Ed. 2d 879 (1996). The instruction given comported with defendant's evidence and was a correct statement of the law. Therefore, we overrule this assignment of error.

[11] In the next assignment of error, defendant contends that the trial court erred when it instructed the jury that it could consider as separate aggravating circumstances whether the murder was committed in the course of a burglary and whether the murder was committed in the course of a rape as set forth in N.C.G.S. § 15A-2000(e)(5). We disagree.

Defendant did not object to this instruction at trial; therefore, our review is limited to review for plain error. N.C. R. App. P. 10(b)(2). "In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. Holden*, 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997), *cert. denied*, 522 U.S. 1126, 140 L. Ed. 2d 132 (1998).

We have consistently held that "where there is separate substantial evidence to support each aggravating circumstance, it is not improper for each aggravating circumstance to be submitted even though the evidence supporting each may overlap." *State v. Conaway*, 339 N.C. 487, 530, 453 S.E.2d 824, 851 (1995), *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). Moreover, "[w]e have interpreted N.C.G.S. § 15A-2000(e) to permit the submission of separate aggravating circumstances pursuant to the same statutory subsection if the evidence supporting each is distinct and separate. . . . [I]t is proper for a trial court to allow such multiple submission of the (e)(5) aggravating circumstance." *State v. Bond*, 345 N.C. 1, 34-35, 478 S.E.2d 163, 181 (1996), *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997).

Defendant argues that the burglary and the rape were not separate and distinct felonies since both felonies were committed against

the same victim and occurred as part of one transaction. To the contrary, the evidence shows that defendant, along with Bell, broke into the victim's home at night with the intent to steal her television. Defendant and Bell returned later, and defendant entered the victim's bedroom and raped her. A review of the record discloses that the evidence is sufficient to support separate crimes of burglary and rape.

Defendant also argues that the legislature did not intend for a jury to consider each crime specified in N.C.G.S. § 15A-2000(e)(5) as a separate aggravating circumstance. Defendant asserts that under the rules of statutory construction the wording of N.C.G.S. § 15A-2000(e)(5) requires that a defendant who commits a murder while engaged in a burglary and while raping the victim be treated for purposes of sentencing the same as a defendant who murders the victim while engaged solely in a burglary. We hold, as defendant concedes this Court has done previously, that the General Assembly did not so intend. *See id.* The trial did not commit error, much less plain error, in submitting each of these aggravating circumstances for the jury's consideration, and this assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises eleven additional issues that have been decided contrary to his position previously by this Court: (i) whether the trial court erred when it did not instruct the jury that it would have to consider and determine whether defendant had a sufficiently culpable state of mind to warrant the imposition of the death sentence; (ii) whether the trial court erred when it denied defendant's motion to question prospective jurors regarding parole eligibility or to instruct prospective jurors that defendant would not be eligible for parole for at least twenty years; (iii) whether the trial court erred when it refused to include defendant's requested instruction regarding parole eligibility in its final charge to the jury; (iv) whether the trial court erred when it instructed the jury that their verdict on Issues One, Three, and Four must be unanimous; (v) whether the trial court erred when it instructed the jury that defendant had the burden to prove the mitigating circumstances by a preponderance of evidence and that the evidence must "satisfy" the jury that the mitigating circumstances existed; (vi) whether the trial court erred when it instructed the jurors that they were to decide whether any of the nonstatutory mitigating circumstances had mitigating value; (vii) whether the trial court erred when it refused to give defendant's requested instruction

defining the type of factors that might be considered mitigating; (viii) whether the trial court erred when instructing the jurors on Issues Three and Four that they "may" consider any mitigating circumstance or circumstances that they determined to exist; (ix) whether the trial court erred when it instructed the jury on Issues Three and Four that "each juror may consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence in Issue Two"; (x) whether the trial court erred when it denied defendant's request for allocution; and (xi) whether the death penalty statute is unconstitutionally vague and overbroad and imposed in a discretionary and discriminatory manner.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings. We have considered defendant's arguments on these issues and conclude that there is no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY

[12] Finally, defendant argues that the death sentence imposed upon him in this case is excessive and disproportionate to the sentence imposed in similar cases, considering both the crime and the defendant. This Court exclusively has the statutory duty in capital cases to review the record and determine (i) whether the record supports the aggravating circumstances found by the jury; (ii) whether the death sentence was entered under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). Having thoroughly reviewed the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no suggestion that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. Accordingly, we turn to our final statutory duty of proportionality review.

The jury at defendant's capital trial in 1994 found defendant guilty of first-degree murder based on premeditation and deliberation and felony murder. At defendant's 1997 capital resentencing proceeding, the jury found both the submitted aggravating circumstances: (i) that the murder was committed while defendant was engaged in the commission of burglary, N.C.G.S. § 15A-2000(e)(5); and (ii) that the mur-

der was committed while defendant was engaged in the commission of rape, N.C.G.S. § 15A-2000(e)(5).

The jury found two statutory mitigating circumstances: (i) that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6); and (ii) that defendant aided in the apprehension of another capital felon, N.C.G.S. § 15A-2000(f)(8). Three statutory mitigating circumstances were submitted but not found: (i) no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (ii) defendant's age at the time of the crime, N.C.G.S. § 15A-2000(f)(7); and (iii) the catchall, N.C.G.S. § 15A-2000(f)(9). Of the nine nonstatutory mitigating circumstances submitted, the jury found four that had mitigating value.

We begin our analysis by comparing this case to those cases in which this Court has determined the sentence of death to be disproportionate. We have determined the death penalty to be disproportionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. Notably, "this Court has never found a death sentence disproportionate in a case involving a victim of first-degree murder who was also sexually assaulted." *State v. Penland*, 343 N.C. 634, 666, 472 S.E.2d 734, 752 (1996), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997).

Defendant contends that there are several cases in which this Court has affirmed life sentences in similar cases involving murder and a sexual offense. However, "the fact that in one or more cases factually similar to the one under review a jury or juries have recommended life imprisonment is not determinative, standing alone, on the issue of whether the death penalty is disproportionate in the case under review." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 46, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). The determination of whether the death penalty is disproportionate in this particu-

lar case "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Id.*, 443 S.E.2d at 47.

Several characteristics in this case support the determination that the imposition of the death penalty was not disproportionate. Defendant was convicted of both felony murder and premeditated and deliberate murder. We have noted that "the finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Moreover, defendant sexually assaulted an elderly woman while she was dead or in her "last breath of life" in her home in her own bed. "A murder in the home 'shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure.' " *State v. Adams*, 347 N.C. 48, 77, 490 S.E.2d 220, 236 (1997) (quoting *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987)), *cert. denied*, 522 U.S. 1096, 139 L. Ed. 2d 878 (1998).

This case is similar to cases in which this Court has found the death penalty proportionate. In *State v. Williams*, 350 N.C. 1, 510 S.E.2d 626, *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 162 (1999), we affirmed the death sentence where the defendant raped and brutally beat an elderly woman during an attempt to steal money to enable him to buy crack cocaine. Although the jury found no statutory mitigating circumstances, the jury did find as nonstatutory mitigating circumstances that at the time the defendant committed the crime, he was under the influence of crack cocaine and/or alcohol and that under oath, defendant expressed remorse for his actions and apologized to the victim's family. *Id.* at 37, 510 S.E.2d at 649. The jury found three aggravators, including two under N.C.G.S. § 15A-2000(e)(5). *Id.* (committed while in the commission of first-degree burglary and while in the commission of first-degree rape). In *State v. Adams*, 347 N.C. 48, 490 S.E.2d 220, we also affirmed the death sentence where the defendant murdered an elderly woman in her home after breaking in to steal money to buy drugs. As did *Williams* and *Adams*, this case involves the premeditated murder of an elderly woman in her home. The fact that defendant in this case raped the victim in her own bed while she was dead or in her "last breath of life" elevates the brutality.

For the foregoing reasons we conclude that defendant's death sentence was not excessive or disproportionate. We hold that de-

fendant received a fair capital sentencing proceeding, free from prejudicial error. The sentence of death is, therefore, left undisturbed.

NO ERROR.