State v. Aiken

---

STATE OF NORTH CAROLINA v. BRIAN ERIC AIKEN

No. 8419SC586

(Filed 19 March 1985)

1. **Constitutional Law § 48— stipulation admitting evidence—defense counsel not ineffective**

   In a prosecution for second-degree rape, defendant's counsel was not ineffective in entering into a stipulation admitting into evidence the results of the vaginal examination of the victim and in not moving for blood type testing of sperm found during the examination because defendant's defense was based on consent.

**2. Constitutional Law § 48— effective assistance of counsel—failure to move to suppress pretrial statement**

Defendant's counsel was not ineffective because he failed to move to suppress defendant's pretrial statement to police where defendant's statement was consistent with the defense presented at trial; moreover, no basis for suppressing the statement appears in the record.

**3. Constitutional Law § 48; Criminal Law § 73.1— failure to object to hearsay—not prejudicial—not ineffective assistance of counsel**

In a prosecution for second-degree rape in which defendant allegedly twice assaulted the victim while she was intoxicated and unconscious in a tent during a party, the failure of defense counsel to object to hearsay testimony that defendant had been told to get out of the tent, that what he had done was wrong, and, after the second incident, that he had been "told before" was not prejudicial or ineffective assistance of counsel. The testimony did not tend to show that defendant was told of the victim's intoxicated and unconscious condition and there was extensive evidence that defendant was aware of the victim's condition. G.S. 15A-1443(a).

**4. Constitutional Law § 48— failure to object to improper questions on race—not ineffective assistance of counsel**

In a prosecution for second-degree rape, defense counsel was not ineffective in allowing the prosecution to elicit testimony solely to raise the issue of race. Although the issue was entirely irrelevant and eliciting the testimony was improper, defendant and the victim were present in the courtroom and the jury had ample opportunity to observe the race of both; moreover, the failure to object could have been a trial tactic under the defense of consent.

**5. Constitutional Law § 48— effective assistance of counsel—length of direct examination**

In a prosecution for second-degree rape, defendant's counsel was not ineffective where the direct examination of defendant covered only eight pages of the transcript and the redirect two pages while the cross-examination by the prosecutor covered forty-five pages. Counsel's examination of defendant adequately presented the defense of consent.

**6. Constitutional Law § 48— effective assistance of counsel—failure to object to instructions**

In a prosecution for second-degree rape, defendant's counsel was not ineffective in that he failed to object to the court's charge on intoxication of the victim.

**7. Criminal Law § 87.1— leading questions—proper**

In a prosecution for second-degree rape, there was no error in the court allowing the State to ask two of its witnesses leading questions. In both instances, the questions were in response to a witness's answer that he had stated all he remembered and both were proper cases for refreshing a witness's memory.

**8. Rape § 4— testimony that victim unconscious—proper**

In a prosecution for second-degree rape, the trial court did not err by admitting lay testimony that the victim was unconscious. The State's witness could not testify that the victim was incapable of giving consent or that she was physically helpless, but he could properly give his opinion of the victim's condition.

**9. Rape § 6— second-degree rape—instructions proper**

In a prosecution for second-degree rape, the trial court did not err by instructing the jury that it could find defendant guilty if the victim was "drunk and, as a result, was so physically unable to resist an act of vaginal intercourse as to be physically helpless." G.S. 14-27.3 contemplates that second-degree rape can occur by the use of force *or* with one who is physically helpless, and does not require that defendant be the one who made the victim mentally incapacitated or physically helpless. G.S. 14-27.1(3).

**10. Rape § 6— second-degree rape—instructions not conflicting**

In a prosecution for second-degree rape, the court did not give conflicting instructions by instructing the jury that the State must prove that defendant knew or had reason to know the victim was helpless after instructing the jury during the testimony of a witness not to consider what defendant was aware of. The court had merely instructed the jury not to consider that witness's testimony about what defendant was aware of.

**11. Criminal Law § 181.3— denial of motion for appropriate relief—not reviewed on appeal—defendant entitled to assert errors on appeal**

The summary dismissal of defendant's motion for appropriate relief and the denial of his motion to vacate and reconsider was not reviewed on appeal because defendant was entitled to assert any errors during the appeal. G.S. 15A-1420(c)(6), G.S. 15A-1448(a)(3) and (4), G.S. 15A-1422(e).

APPEAL by defendant from *Helms, Judge*. Judgment entered 26 October 1983 in Superior Court, ROWAN County. Heard in the Court of Appeals 12 February 1985.

This is a criminal action in which defendant was indicted, tried and convicted, for two counts of second degree rape.

The essential facts are:

On 9 and 10 April 1983, some four to five hundred Catawba College students and their guests attended an event known as the Begger's Banquet in a vacant field located in Rowan County. The Begger's Banquet, sponsored off-campus by students, is an event where students set up tents and socialize for a 24 hour period. There is beer and food available and a bonfire.

Defendant, Brian Eric Aiken, and the victim were among the many students and guests in attendance. They were not dating or together for the event, but knew each other as students at Catawba College. According to State's witnesses, the victim consumed beer for a long period and eventually became very intoxicated. She was found by her friends, face down in the mud, beside a tent owned by State's witness Keith Thompson, a Catawba College student. Some of the victim's friends carried her into the tent. The State's evidence tended to show that the victim was "really passed out" and "unconscious and intoxicated."

At some point, victim's friends carried her to some nearby woods so that she could "go to the bathroom." Victim was then carried back to the tent where she was placed, unconscious, behind a divider in the tent. At about this same time, defendant was outside the tent and participated in a discussion with the victim's friends. Keith Thompson testified that defendant was told that the victim was passed out inside the tent. The victim's friends then left her alone in the tent and went to the bonfire.

Both State's witnesses and defendant testified that defendant entered the tent with the victim. The State's evidence tended to show that when the victim's friends returned from the bonfire, they found defendant "laying on top of" the victim in the back half of the tent, behind the divider. Keith Thompson testified that the victim's shirt was unbuttoned and that she was naked from the waist down. There was conflicting evidence that defendant was either "chased out" of the tent or that he "left on his own."

The victim was then left on a lounge chair in the tent by her friends who again went to the bonfire. When the victim's friends later returned, they discovered defendant on the left side of the tent with his pants off. The victim was still on the lounge chair and her pants were off. The victim's friends put her clothing back on "because she wasn't capable of doing it herself" and locked her in a friend's automobile for the remainder of the night.

On 10 April 1983, two of the victim's friends went to her dormitory room on the campus of Catawba College and told her of the events occurring in the tent at the Begger's Banquet, saying that the victim had been "[taken] advantage of." The victim and her friends identified defendant from a picture in the school year book and the victim notified police that she had been raped.

The police investigation was conducted by Lt. John Noble and Det. T. D. Wilhite of the Rowan County Sheriff's Department. The officers interviewed the victim and had her submit to testing at a nearby hospital. This testing revealed the presence of spermatozoa in the victim's vagina.

On returning to her room the victim discovered that defendant had been trying to reach her by telephone. One of the victim's friends, Tammy Kearny, returned defendant's telephone call while pretending to be the victim.

On direct examination, Ms. Kearny testified as to the substance of her conversation with defendant:

> I immediately told [defendant] that I was [the victim] and he started to ask me not to press charges, that he would go to jail. We were talking and I asked him what had happened and he said that, you know, I was drunk and Ed and Keith and those guys told him he could sleep in the tent for the night. He said he walked into the tent and saw [the victim] laying there passed out. He said, "you are a girl and I am a guy and it just happened."

The victim testified that she consumed beer for several hours after arriving at the Begger's Banquet. She testified that she only remembered a light coming on, someone yelling and that she thought it was all a dream. She further testified that she had not given defendant or anyone permission to have sexual intercourse with her.

Lt. Noble and Det. Wilhite interviewed defendant on 10 April 1983 at the Rowan County Sheriff's Department. Defendant gave a written statement describing the events at the Begger's Banquet after being advised of and waiving his rights to silence and to have counsel present. Defendant stated to police that he saw someone carry the victim off to the woods and back to the tent, that "some of the people were talking about how [intoxicated the victim] was" and that he had sex with the victim twice but that she had consented both times. Defendant further stated that after the second episode of sexual intercourse he helped the victim's friends put her clothes back on and that "she was still very drunk."

At trial, defendant presented evidence of consent as a defense to the rape charges, stipulated to the admission of the vaginal test results and did not contest the admission into evidence of his statement to police.

The jury returned a verdict of guilty to both counts of second degree rape and defendant was sentenced to two consecutive six year terms of imprisonment as a committed youthful offender pursuant to G.S. Chapter 148, Article 3B.

Defendant later filed two motions for appropriate relief which were denied. From the judgment and denial of the motions for appropriate relief, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General John R. Corne and Associate Attorney General Gayl M. Manthei, for the State.*

*Badger, Johnson, Chapman & Michael, by Ronald L. Chapman and Mark A. Michael, for defendant-appellant.*

EAGLES, Judge.

I

Defendant first assigns as error that his trial counsel's representation was prejudicially ineffective. We find no error.

[1] Defendant first argues that trial counsel was ineffective in entering into a stipulation admitting into evidence the results of vaginal examination of the victim. We do not agree.

Defendant's defense at trial was based on consent, i.e., that while he did have sexual intercourse with the victim, it was with her permission. In that context test results indicating that the victim did have sexual intercourse could not be prejudicial to defendant. We will not second guess counsel on questions of trial strategy. *State v. James*, 60 N.C. App. 529, 299 S.E. 2d 451 (1983). Defendant's argument that his counsel was ineffective in failing to move for blood type testing of sperm found during vaginal examination of the victim must fail for the same reasons. *Id.*

[2] Defendant next argues that his trial counsel was ineffective because he failed to move to suppress defendant's pretrial statement to police. We do not agree.

Defendant now asserts that, as a practical matter, the suppression of his statement was his sole defense and that failure to pursue a defendant's sole defense is ineffective assistance of counsel. *See Bell v. Georgia*, 554 F. 2d 1360 (5th Cir. 1977); *U.S. v. Easter*, 539 F. 2d 663 (8th Cir. 1976), *cert. denied*, 434 U.S. 844 (1977). While we agree that failure to pursue a defendant's sole defense may be ineffective assistance of counsel, here the sole defense presented by defendant at trial was consent. To move to suppress a voluntary statement that appears to be consistent with the trial strategy chosen by defendant and his counsel would be frivolous. Defense counsel is not required to bring frivolous motions or objections. *State v. Milano*, 297 N.C. 485, 256 S.E. 2d 154 (1979), *overruled on other grounds*, 307 N.C. 628, 300 S.E. 2d 351 (1983). We note in passing that there does not appear in the record any basis upon which defendant's statement could have been suppressed even if the motion to suppress had been made. The admission into evidence of defendant's statement to police is therefore not prejudicial and counsel's failure to move for suppression of the statement is not ineffective assistance of counsel.

[3] Defendant next argues that trial counsel was ineffective by failing to object to impermissible and prejudicial questions asked by the prosecutor. We do not agree.

During the direct examination of State's witness Christopher Houk, the following exchange occurred:

Q: Was Ed Gettis there?

A: Yes, sir.

Q: Did he say anything that you recall?

A: To [defendant]?

Q: Yes.

A: I can't remember actual words. I remember he was really mad, saying something like "he told him before" or something.

This comment to defendant by Ed Gettis, a friend of the victim and a State's witness, was made at the time of the second alleged sexual encounter between defendant and the victim. Defendant argues that this evidence tends to show that Ed Gettis

gave some warning or information to defendant which would inform defendant of the victim's unconscious condition, an element of the crime of second degree rape which the State must prove beyond a reasonable doubt. Defendant asserts that the testimony by Houk concerning the statement of Gettis to defendant is hearsay and not admissible.

"Evidence, oral or written is called hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *State v. Edwards*, 305 N.C. 378, 381, 289 S.E. 2d 360, 362 (1982). Hearsay has also been defined by our appellate courts as "the assertion of any person, other than that of the witness himself in his present testimony, offered to prove the truth of the matter asserted." *State v. Hampton*, 294 N.C. 242, 246, 239 S.E. 2d 835, 838 (1978). Under either definition, the result is the same. Here, the prosecutor asked Houk the substance of what Gettis said to defendant. This evidence depended upon the competency and credibility of the speaker, Gettis, and it appears to be offered for nothing other than to convey to the jury the substance or truth of the statement. It was error to admit Houk's testimony regarding Gettis' statement to defendant. However, erroneous admissions of hearsay evidence are not always prejudicial. *State v. Sparks*, 297 N.C. 314, 255 S.E. 2d 373 (1970).

Evidence at trial tended to show that Gettis had once told defendant to "get out" of the tent after Gettis had discovered defendant on top of the victim. Further evidence tended to show that Gettis told defendant what he had allegedly done was "not right." When told defendant was in the tent with the victim a second time, Gettis stated to bystanders "not again." Houk's testimony indicating Gettis told defendant, "I told you before" does not tend to show that defendant was told by Gettis of the victim's intoxicated and unconscious condition. Rather, the testimony tends to show that defendant had been told to "get out" of the tent or that what defendant was doing was "not right." Further, there was extensive evidence, including defendant's own statement, that defendant was aware of the victim's condition. G.S. 15A-1443(a) provides:

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when

there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

We are convinced that, given the facts, circumstances and theory of defense in this case, the result would have been the same if counsel had made timely objection to the testimony in question and the trial court had properly excluded it. Defendant on appeal shows no prejudice. Under these circumstances the failure of trial counsel to object does not rise to the level of ineffective assistance of counsel.

[4] Defendant next argues that trial counsel was ineffective in allowing the prosecutor to elicit testimony from a State's witness solely to raise the issue of race. The basis for this argument is the following testimony of Gettis:

Q: Did [defendant] say anything about the fact that he was black and that's why you—

A: Yeah, yeah. He mentioned that up at the fire after I got the beer. He said, "If I was white you wouldn't have done that; you're only reacting because I'm black."

Defendant is black. The victim is white. While the issue of race is entirely irrelevant here and the eliciting of the testimony by the prosecutor was clearly improper, we cannot say that defendant was prejudiced by the testimony. Both defendant and victim were present in the courtroom and testified before the jury. The jury had ample opportunity to observe the race of both defendant and the victim. *See, State v. Hall,* 60 N.C. App. 450, 299 S.E. 2d 680 (1983). We also note that under the defense theory of consent, the failure to object to this testimony reasonably could have been a trial tactic advantageous to defendant. Accordingly, counsel's failure to object does not rise to the level of ineffective assistance of counsel.

[5] Defendant next argues that his trial counsel's direct examination of defendant was not reasonably within the range of competency demanded of attorneys in criminal cases. We do not agree.

The basis of defendant's argument is that the direct examination of defendant covered only eight pages of the transcript of trial while the cross examination of defendant by the prosecutor covered forty-five pages of the transcript of trial. The redirect examination of defendant covered two pages. Defendant apparently contends that defense counsel was ineffective as a matter of law because the direct and redirect examinations were brief.

We reject defendant's contention summarily noting that defendant cites no authority for the proposition that a brief examination of the defendant as a witness demonstrates, as a matter of law, that counsel was ineffective. "This failure to provide authority for such an assertion is probably due to the fact there is none." *State v. Weaver*, 306 N.C. 629, 641, 295 S.E. 2d 375, 382 (1982). We have carefully examined the record before us and note that trial counsel's examinations of defendant adequately present the defense theory of consent. Here, too, defendant has shown no prejudice.

[6] Defendant finally assigns as ineffective assistance of counsel the failure of counsel to object to the trial court's charge to the jury regarding the intoxication of the victim. For reasons that are discussed *infra*, we find no error in counsel's failure to object to the trial court's charge to the jury regarding the intoxication of the victim.

> The decisions on what witnesses to call, whether and how to conduct [examinations], what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the attorney after consultation with his client. Trial counsel are necessarily given wide latitude in these matters. Ineffective assistance of counsel claims are not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness.

*State v. Milano*, at 495, 256 S.E. 2d at 160.

Our examination of the record in this case reveals that there is no reasonable probability of a different result had trial counsel performed differently, nor is there a showing of a reasonable possibility of a different result with "effective" assistance. Defendant has failed to show that his "counsel's representation fell

below an objective standard of reasonableness." *Strickland v. Washington*, --- U.S. ---, 104 S.Ct. 2052, 2065, 80 L.Ed. 2d 674, 693 (1984). The record before us indicates that defense counsel at trial cross examined vigorously, made numerous objections which resulted in some favorable rulings, and presented a strong defense of consent. We hold that trial counsel gave defendant "the representation of a skilled, capable, intelligent lawyer who handled his case in the highest traditions of the legal profession." *People v. Eckstrom*, 43 Cal. App. 3d 996, 1003, 118 Cal. Rptr. 391, 395 (1974). That he did not prevail in this case before a jury does not impugn his skill as an advocate or the quality of his representation.

## II

**[7]** Defendant next assigns as error the trial court's allowing leading questions to be asked of a State's witness. We find no error.

Defendant argues that two questions asked by the prosecutor of State's witnesses were impermissible and leading. Without restating the questions and answers, we note that in both instances, the allegedly leading question was in response to a witness's answer that he had stated all he remembered. Both were proper cases for refreshing a witness's memory and allowance of the testimony was in the discretion of the trial court. *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10, *cert. denied*, 429 U.S. 932 (1976); *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976).

## III

**[8]** Defendant next assigns as error the trial court's admission into evidence of lay opinion as to the victim's state of unconsciousness. We find no error.

The basis of defendant's argument is that a State's witness was allowed to testify that the victim was, in her opinion, unconscious. Defendant argues that the "legal question, the one on which this whole case turned was whether the prosecuting witness was unconscious at the time of the sexual acts alleged." Defendant's argument is misplaced. Allowing a State's witness to testify as to whether defendant was conscious, unconscious or under the influence of alcohol is permissible opinion testimony from a lay witness. *See* Brandis, North Carolina Evidence, Section

129 (1982 and Cum. Supp.). We note that in *State v. Smith*, 310 N.C. 108, 310 S.E. 2d 320 (1984), our Supreme Court held that a witness could not testify as to whether or not a defendant had the capacity to proceed to trial. The witness could, however, describe defendant's condition. Similarly, the State's witness may not testify that the victim was incapable of giving consent or that she was physically helpless, but he could properly testify as to his opinion of the victim's condition.

## IV

[9] Defendant next assigns as error the trial court's instruction to the jury that it could find defendant guilty if it found, among other facts, that the victim was "drunk and, as a result, was so physically unable to resist an act of vaginal intercourse as to be physically helpless." We find no error.

The thrust of defendant's argument is that the jury, under the instructions given, was not asked to consider whether defendant used force against the victim. Defendant cites *State v. Johnston*, 76 N.C. 209 (1877) where Justice Read noted "[r]ape is the carnal knowledge of a female forcibly and against her will." *Id.* at 210.

Defendant here, however, was convicted of the statutory offense of second degree rape, G.S. 14-27.3, which provides:

(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) By force and against the will of the other person; *or*

(2) Who is mentally defective, mentally incapacitated, or physically helpless and the person performing the act knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless. [Emphasis added.]

G.S. 14-27.3 contemplates that the crime of second degree rape can occur if there is vaginal intercourse by the use of force *or* with one who is, among other things, physically helpless. "Physically helpless means (i) a victim who is unconscious; or (ii) a

victim who is physically unable to resist an act of vaginal inter-course or a sexual act or communicate unwillingness to submit to an act of vaginal intercourse or a sexual act." G.S. 14-27.1(3). G.S. 14-27.3 also does not require that defendant be the one who made the victim mentally incapacitated or physically helpless. Inter-course under these circumstances would have been rape even at common law since the rule was that an unconscious or insensibly drunk victim could not consent to intercourse.

> One of the leading American cases on the law of rape in-volved unlawful sexual intercourse with a woman "so drunk as to be utterly senseless" . . . [The court held] that unlawful intercourse "with a woman, without her consent, while she was, as [defendant] knew, wholly insensible so as to be in-capable of consenting, and with such force as was necessary to accomplish the purpose was rape." It is to be emphasized that this was not a case in which defendant had made the woman drunk but merely one in which he had taken advan-tage of her helpless condition. *Commonwealth v. Burke*, 105 Mass. 376, 380-1 (1870).

Perkins, *Criminal Law*, p. 163 (2d Ed. 1969).

Here, there was sufficient evidence from which a jury could find that defendant unlawfully had vaginal intercourse with the victim who was physically helpless due to intoxication and that he knew or reasonably should have known the victim's condition. Ac-cordingly, the trial court's instruction as to physical incapacity of the victim due to her intoxication was proper. The physical act of vaginal intercourse with the victim while she is physically help-less is sufficient "force" for the purpose of second degree rape under G.S. 14-27.3.

Defendant also assigns error to the failure of trial counsel to object to the trial court's instruction to the jury concerning intox-ication and physical helplessness. We find no error and failure to object is not ineffective assistance of counsel. *State v. Milano, supra; State v. Jones, supra.*

## V

[10] Defendant next assigns as error allegedly conflicting in-structions to the jury regarding defendant's knowledge of the vic-

tim's condition at the time the alleged acts of vaginal intercourse took place. We find no error.

During direct examination of State's witness Jeffrey Bauer, the following exchange occurred:

> Q: Was [defendant] aware of [victim's] condition?
>
> DEFENSE COUNSEL: OBJECTION, your Honor.
>
> A: I think he was, yeah.
>
> DEFENSE COUNSEL: OBJECTION. No basis.
>
> THE COURT: SUSTAINED. Members of the jury, don't consider what [defendant] was aware of.

Later, in instructing the jury, the trial court gave the following instruction: "Third, the State must prove that the defendant knew or had reason to believe or should have known that [the victim] was physically helpless."

Defendant argues that the evidentiary ruling made by the trial court earlier in the trial was in conflict with the jury charge. We do not agree.

The jury charge was clear and precise, correctly stating the elements of second degree rape. The evidentiary ruling complained of considered the witness's basis to testify about defendant's state of awareness and was correct. Contrary to defendant's argument, the trial court was not ruling that the jury was forbidden to consider defendant's awareness of the victim's condition. Rather, the trial court ruled and instructed the jury not to consider what this witness had testified to concerning what defendant was aware of. The assignment of error is overruled.

## VI

[11] Lastly, defendant assigns error to the trial court's denial of his motion for appropriate relief and motion to vacate and reconsider the order of summary dismissal of his motion for appropriate relief. We find no error.

On 7 November 1983, defendant filed a motion for appropriate relief alleging ineffective assistance of counsel based on his failure to move to suppress defendant's statement to police

and to contact and call certain defense witnesses, and alleging un-constitutional makeup of the jury pool, that there was insufficient evidence to support defendant's convictions and that the verdict was contrary to the weight of the evidence.

Defendant filed no supporting affidavit and offered no evi-dence beyond the bare allegations in the motion for appropriate relief. G.S. 15A-1420(c)(6) requires that "[a] defendant who seeks relief by motion for appropriate relief must show the existence of the asserted ground for relief. Relief must be denied unless preju-dice appears." Since defendant did not comply with G.S. 15A-1420 (c)(6), the trial court's summary denial of the motion for ap-propriate relief was not error.

On 30 December 1983, defendant filed a "motion to vacate and reconsider the order of summary dismissal of motion for ap-propriate relief." The order summarily denying the motion for ap-propriate relief was filed 22 December 1983 so the trial court properly retained jurisdiction to rule upon the 30 December 1983 "motion to vacate and reconsider the order of summary dismissal of motion for appropriate relief," G.S. 15A-1448(a)(3). However, the trial court took no action upon the motion. G.S. 15A-1448(a)(4) pro-vides: "If there has been no ruling by the trial judge on a motion for appropriate relief within 10 days after motion for such relief has been made, the motion shall be deemed denied." We need not review the trial court's denial of defendant's "motion to vacate and reconsider the order of summary dismissal of motion for ap-propriate relief" because any error could not possibly prejudice defendant since he is entitled to assert those same errors on this appeal. G.S. 15A-1422(e); *State v. Brooks*, 49 N.C. App. 14, 270 S.E. 2d 592 (1980), *rev. denied*, 301 N.C. 723, 276 S.E. 2d 285 (1981).

Defendant's remaining assignments of error are without merit.

For the reasons herein stated, we find,

No error.

Judges ARNOLD and PARKER concur.