STATE OF NORTH CAROLINA v. JUNIOUS LEE RHUE, JR.

No. COA01-718

(Filed 21 May 2002)

**1. Evidence— prior crimes or bad acts—assault with a deadly weapon**

The trial court did not abuse its discretion in a second-degree murder case by permitting the State to cross-examine defendant's character witnesses under N.C.G.S. § 8C-1, Rule 405(a) regarding defendant's 1980 conviction for assault with a deadly weapon, because: (1) the State in rebuttal can introduce evidence of defendant's bad character after defendant introduces evidence of his good character; (2) Rule 405(a) does not contain any time limit or rule regarding remoteness, and our Supreme Court has explicitly refused to impose one; and (3) the witnesses' testimony that they knew defendant in 1980 as a peaceful person made that time-frame relevant.

**2. Discovery— witness interview—timely disclosure to defendant—due process**

A detective's interview with a witness was timely disclosed to defendant so that the detective was properly allowed to read

from the interview transcript, although the State did not disclose the interview promptly after it was conducted, because (1) under N.C.G.S. § 15A-903(f)(1) the State was not required to disclose a witness's statement in advance of trial, and (2) the due process requirements of *Brady v. Maryland*, 373 U.S. 83, were satisfied where defense counsel had possession of the interview before the trial commenced, he made effective use of the transcript at trial by extensively cross-examining the witness with the interview transcript, and the State did not introduce the detective's testimony regarding the interview until after defense counsel had already vigorously cross-examined the witness about the content of the interview.

**3. Evidence— hearsay—corroboration—prior consistent statements**

The trial court did not commit plain error in a second-degree murder case by permitting the investigating detective to read from a witness's interview even though defendant contends it constituted inadmissible hearsay, because: (1) although the witness's prior statements differed slightly from his testimony and provided some new pieces of information, such variation is permissible; (2) despite some minor variations, the witness's prior statements tended to confirm and corroborate his trial testimony, and any variations were to be considered by the jury in assessing the weight to afford the evidence presented; and (3) defendant has failed to point to a rule that limits testimony on prior consistent statements to the declarant only.

**4. Criminal Law— pro se motion for appropriate relief—failure to show entitlement to hearing**

The trial court did not err in a second-degree murder case by denying, without a hearing, defendant's pro se motion for appropriate relief, because: (1) defendant's alleged newly discovered evidence, even if true, would not have the necessary bearing on his trial to warrant the grant of a new trial; and (2) defendant failed to file any affidavits or other evidence to support his assertions that his counsel was ineffective.

Appeal by defendant from judgment entered 22 September 2000 by Judge Jack Thompson in Johnston County Superior Court. Heard in the Court of Appeals 16 April 2002.

STATE v. RHUE

[150 N.C. App. 280 (2002)]

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Daniel D. Addison, for the State.*

*Martin A. Tetreault for defendant-appellant.*

HUNTER, Judge.

Junious Lee Rhue, Jr. ("defendant") appeals his conviction of second degree murder and resulting sentence. Defendant assigns error to the admission of various testimony and to the denial of his motion for appropriate relief. For reasons stated herein, we conclude there was no error.

The State's evidence tended to show that on 12 July 1999, Thomas Holiday and his brother Charles Nichols encountered defendant on a street in Smithfield, North Carolina at approximately 8:00 p.m. Holiday and Nichols knew defendant from living in the same neighborhood for several years. Defendant began walking with Holiday and Nichols. Holiday testified that defendant seemed "agitated" and was making comments about the "young kids" in the neighborhood who "don't care about nothing." Defendant then removed a pistol from the front of his pants and began waving it in the air. At Holiday's and Nichols' request, defendant replaced the pistol in his pants and continued walking with them until Holiday and Nichols arrived at their mother's house.

Holiday testified that he left his mother's house to walk home around 11:00 p.m. that evening. Holiday observed defendant talking to a lady who was in her car, stopped at a stop sign. Holiday overheard the two talking about Kevin Shumpert, whom Holiday knew from the neighborhood. Holiday heard the lady in the car tell defendant that Shumpert had "done her wrong." Defendant appeared to be angry, and Holiday heard him state that he was "fed up with these young people" and that he "needs to teach somebody a lesson." Holiday then observed Shumpert walking nearby, whereupon the lady in the car said to defendant, "[t]here he goes right now." Defendant said "I'll go straighten this out," and began walking towards Shumpert. Holiday called to defendant, asking if he "still [had] what [he] had earlier today," meaning the pistol. Defendant responded that he did, and told Holiday he was going to "teach [Shumpert] a lesson."

Defendant began calling to Shumpert, who then turned to walk towards defendant. Holiday observed defendant remove the pistol

from his pants and tell Shumpert to "[h]old it." Defendant held the gun on Shumpert and demanded that he "go into [his] pockets" and give defendant "what [he] owe[d] [him]." Shumpert then placed his hands in his pockets, whereupon defendant "froze up" and instructed Shumpert not to remove his hands. Shumpert told defendant that he would give him whatever he wanted, and begged defendant not to shoot him. Defendant told Shumpert that he could remove his hands from his pockets on the count of three. Defendant counted to two, then shot and killed Shumpert, whose hands were still in his pockets. Defendant then squatted beside Shumpert, looked in his pockets, and ran away.

Defendant testified on his own behalf. He stated that someone had stolen a bicycle from him a few days prior. On the evening of the shooting, defendant testified that he was on his way to his cousin's house, and that he took his pistol because it was dark and he was alone. According to defendant, Shumpert approached defendant on the street and told him that he was the one who took his bicycle, and began to taunt him, saying he was going to "smoke" him. Defendant told Shumpert that he had "no animosity" and asked to be left alone. Defendant turned from Shumpert, and as he looked back at him over his shoulder, he saw Shumpert's hand go "back to the right," whereupon defendant pulled the pistol, fired, and ran. Defendant testified that he was fearful for his life when he saw Shumpert move his hand, and he believed Shumpert would follow through with his threats.

A jury convicted defendant on 22 September 2000 of second degree murder. The trial court entered judgment on that date, sentencing defendant to 151-191 months in prison. On 24 October 2000, defendant filed a handwritten, *pro se* document which the trial court treated as a motion for appropriate relief. On 27 October 2000, a trial judge other than the one who presided over the trial entered an order denying the motion without a hearing. Defendant appeals his judgment and commitment.

[1] Defendant first argues the trial court erred in permitting the State to cross-examine defendant's character witnesses regarding defendant's 1980 conviction for assault with a deadly weapon. Prior to trial, defendant moved to suppress evidence of the conviction. The trial court granted defendant's motion to suppress, thereby prohibiting the State from questioning defendant on the conviction, but left open the possibility that the evidence might be admissible through other witnesses if defendant were to put his character into issue. Defendant presented two character witnesses, both of whom testified that they

had known defendant since childhood, and that they had always known him to be a peaceful person. On cross-examination, the State questioned each witness as to whether they remembered "hearing a report in 1980 that [defendant] assaulted a person with a deadly weapon, inflicting serious injury[.]" Defendant argues that this was error because the incident was too remote to the crime at issue and therefore, its prejudice outweighed its probative value.

"A criminal defendant is entitled to introduce evidence of his good character, thereby placing his character at issue. The State in rebuttal can then introduce evidence of defendant's bad character." *State v. Roseboro*, 351 N.C. 536, 553, 528 S.E.2d 1, 12, *cert. denied*, 531 U.S. 1019, 148 L. Ed. 2d 498 (2000). Under N.C. Gen. Stat. § 8C-1, Rule 405(a) (1999), the State may do so by cross-examining a defendant's character witnesses as to "relevant specific instances of conduct." Thus, where the defendant in *Roseboro* introduced testimony from family members regarding his reputation for peacefulness, the State was entitled to cross-examine the witnesses as to whether they knew of any accusations that the defendant acted violently towards his wife. *Roseboro*, 351 N.C. at 553, 528 S.E.2d at 12.

Moreover, unlike evidence of prior bad acts being offered under N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999), Rule 405(a) does not contain any time limit or rule regarding remoteness, and our Supreme Court has explicitly refused to impose one. *See State v. Cummings*, 332 N.C. 487, 507, 422 S.E.2d 692, 703 (1992). Rather, "[a] 'relevant' specific instance of conduct under Rule 405(a) would be any conduct that rebuts the earlier reputation or opinion testimony offered by the defendant." *Id.* (holding State's cross-examination of character witnesses as to 1963 assault permissible after witnesses had testified they had never known defendant to be violent). Nevertheless, the trial court possesses the sound discretion to exclude evidence otherwise admissible under Rule 405(a) where the probative value of the rebuttal evidence is substantially outweighed by its prejudice. *Id.*; N.C. Gen. Stat. § 8C-1, Rule 403 (1999).

In this case, defendant was approximately twenty-two years old at the time of the prior conviction. Both character witnesses testified that they knew defendant in 1980 at the time of the conviction. Thus, their testimony that they had always known defendant to be a peaceful person applied to their knowledge of him in 1980. Their testimony that they knew defendant in 1980 as a peaceful person made that time-frame relevant, and the State was therefore entitled under Rule 405(a) to rebut their character evidence by asking the witnesses if

they were aware of a report of a prior assault by defendant. We discern no abuse of discretion in the trial court's determination that this Rule 405(a) evidence was also admissible under Rule 403.

[2] Defendant argues next that the trial court erred in allowing the investigating detective, Steve Knox, to read from interviews that he conducted with defendant and Holiday following the shooting because the interviews contained exculpatory evidence which was not timely disclosed to defendant by the State. Detective Knox interviewed both defendant and Holiday separately the day after the shooting, 13 July 1999. Detective Knox did not transcribe the interviews. According to the prosecutor, the State did not become aware of the existence of the interviews until 3 August 2000, whereupon the State made a motion to have the interviews transcribed, and informed defense counsel of their existence. The trial court entered an order allowing the motion for transcription on 9 August 2000, and directed the State to provide a copy of the transcript of defendant's interview to defense counsel in accordance with N.C. Gen. Stat. § 15A-903 (1999). Under N.C. Gen. Stat. § 15A-903(a)(1), upon a defendant's motion, the State must be ordered to allow the defendant "to inspect and copy or photograph any relevant written or recorded statements made by the defendant . . . within the possession, custody, or control of the State the existence of which is known or by the exercise of due diligence may become known to the prosecutor." N.C. Gen. Stat. § 15A-903(a)(1).

We first note that under N.C. Gen. Stat. § 15A-903(f)(1), the State was not required to disclose Holiday's statements in advance of trial. Under that rule, "no statement or report in the possession of the State that was made by a State witness or prospective State witness, other than the defendant, shall be the subject of subpoena, discovery, or inspection until that witness has testified on direct examination in the trial of the case." N.C. Gen. Stat. § 15A-903(f)(1). Defendant argues that this statute aside, *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963) and due process required that the State disclose the interview promptly after it was conducted, regardless of the prosecutor's knowledge of the interview.

In fact, "[o]ur Supreme Court has held 'that due process and *Brady* are satisfied by the disclosure of the evidence at trial, so long as disclosure is made in time for the defendants to make effective use of the evidence.'" *State v. Small*, 131 N.C. App. 488, 490, 508 S.E.2d 799, 801 (1998) (citation omitted). Defendant argues that he was unable to make effective use of the Holiday interview because the

delay in disclosure deprived him of the opportunity to use the interview to investigate and possibly locate more witnesses. However, similar arguments based on the loss of the defense's ability to use the evidence as an investigatory tool due to the State's failure to disclose in advance of trial have been rejected by this Court as being both speculative, *see id.*, and not required by law, *see State v. Taylor*, 344 N.C. 31, 50, 473 S.E.2d 596, 607 (1996) (no due process or *Brady* violation where State provided officer's notes to defense four days prior to State resting its case; defense counsel had "ample opportunity" to make use of the evidence, including contacting witnesses if defendants so desired).

The record in the present case reveals that defense counsel had possession of the Holiday interview before the trial even commenced, and that he made effective use of the transcript at trial by extensively cross-examining Holiday with the interview transcript. Indeed, we observe that the State did not introduce Detective Knox's testimony regarding Holiday's interview until after defense counsel had already vigorously cross-examined Holiday regarding the content of the interview. It is well-established that the benefit of any objection to the introduction of evidence is lost where the evidence is previously admitted without objection, and particularly, where defendant is responsible for first introducing the evidence. *See State v. Hunt*, 325 N.C. 187, 196, 381 S.E.2d 453, 459 (1989); *State v. Moses*, 316 N.C. 356, 362, 341 S.E.2d 551, 554-55 (1986) (defendant cannot object to introduction of portions of a letter written by defendant when defendant later read letter into evidence on direct examination).

With respect to Detective Knox's reading of defendant's interview, we likewise observe that defendant failed to object to the introduction of this testimony, and then proceeded to use the interview transcript to extensively cross-examine Detective Knox. Although defendant's assignment of error contained in the record alleges that the introduction of this testimony was plain error, defendant has not argued in his brief on appeal that the alleged error amounted to plain error. Our Supreme Court has held that when a defendant who fails to object at trial also fails to "specifically and distinctly argue in his brief that the trial court's [actions] amounted to plain error, this Court will not conduct plain error review." *State v. Parks*, 147 N.C. App. 485, 490, 556 S.E.2d 20, 24 (2001); *see also* N.C.R. App. P. 10(c)(4) (defendant must "specifically and distinctly" contend judicial action amounts to plain error). These arguments are therefore rejected.

**[3]** In a related argument, defendant maintains that Detective Knox should not have been permitted to read from Holiday's interview because it constituted inadmissible hearsay, and that the trial court's admission of this evidence constituted plain error. Defendant concedes that our courts allow the admission of prior statements made by a witness for the purpose of corroborating that witness' testimony at trial, despite the statements' hearsay nature. *See State v. Gell*, 351 N.C. 192, 204, 524 S.E.2d 332, 340, *cert. denied*, 531 U.S. 867, 148 L. Ed. 2d 110 (2000).

"Corroborative evidence by definition tends to 'strengthen, confirm, or make more certain the testimony of another witness.'" *State v. McGraw*, 137 N.C. App. 726, 730, 529 S.E.2d 493, 497 (citation omitted), *disc. review denied*, 352 N.C. 360, 544 S.E.2d 554 (2000). "Corroborative evidence need not mirror the testimony it seeks to corroborate, and may include new or additional information as long as the new information tends to strengthen or add credibility to the testimony it corroborates." *Id.* "In other words, '[w]here testimony which is offered to corroborate the testimony of another witness does so substantially, it is not rendered incompetent by the fact that there is some variation.'" *State v. Lloyd*, 354 N.C. 76, 104, 552 S.E.2d 596, 617 (2001) (citation omitted). Such variations only affect the weight of the evidence, not its admissibility. *Id.*

Here, defendant argues that Holiday's prior statements were not sufficiently consistent with Holiday's trial testimony to be considered admissible prior consistent statements. Again, we disagree. Although Holiday's prior statements differed slightly from Holiday's testimony and provided some new pieces of information, such variation is permissible. *See id.* Our review of the transcript leads us to conclude that despite some minor variations, Holiday's prior statements tended to confirm and corroborate Holiday's trial testimony. To the extent there were variations between the two, the jury was to consider this fact in assessing the weight to afford the evidence presented. *See id.* The trial court did not commit plain error in allowing Detective Knox's testimony.

Moreover, defendant suggests that the State impermissibly used Detective Knox to present Holiday's prior statements to the jury, as opposed to Holiday himself. However, defendant has failed to point to any rule, nor are we aware of one, that limits testimony on prior consistent statements to the declarant only. *See, e.g., Taylor*, 344 N.C. at 46, 473 S.E.2d at 605 (police officer's testimony regarding witness' prior statement admissible to corroborate witness' trial testimony);

*State v. Beane*, 146 N.C. App. 220, 232, 552 S.E.2d 193, 201 (2001) (victim's prior statements, as testified to by both family members and detective, admissible for purposes of corroborating victim's trial testimony). This assignment of error is overruled.

[4] In his final argument, defendant contends the trial court erred in denying, without a hearing, his *pro-se* motion for appropriate relief, which raised various issues. On appeal, defendant argues that the trial court was required to have conducted a hearing on his motion for two reasons: (1) because the motion established that defendant possessed newly discovered evidence which "would drastically change the defense of the case"; and (2) because defendant sufficiently established a claim for ineffective assistance of counsel.

Under N.C. Gen. Stat. § 15A-1420(c)(1) (1999), a defendant "is entitled to a hearing on questions of law or fact arising from the motion and any supporting or opposing information presented unless the court determines that the motion is without merit." Thus, a defendant is not entitled to a hearing on a motion for appropriate relief if it can be determined from the motion itself that the defendant is not entitled to relief. *See State v. McHone*, 348 N.C. 254, 257, 499 S.E.2d 761, 763 (1998).

In this case, we agree with the trial court that defendant's motion failed to show that he was entitled to any relief, and thus, defendant was not entitled to a hearing on his motion.[1] Defendant first argues that he is entitled to relief on the basis of newly discovered evidence consisting of a witness who would be willing to testify that Holiday and Nichols took a gun from Shumpert on the night of the shooting. Defendant maintains that this new evidence "would drastically change the defense of the case, given that Defendant's claim of self-defense and the fact that, at trial, the prosecutor elicited testimony from Holiday that Shumpert had no weapon."

---

1. We acknowledge that under N.C. Gen. Stat. § 15A-1420(c)(7), the trial court is required to make conclusions of law and state its reasoning before denying the motion where the defendant asserts with specificity in his motion that the judgment was obtained in violation of his constitutional rights. Defendant in this case did assert a violation of his constitutional rights in his motion, but the trial court did not make conclusions of law. However, defendant has not assigned error to this omission, and we therefore do not address it here. Nevertheless, for clarity, we note that our Supreme Court has held that N.C. Gen. Stat. § 15A-1420(c)(7), as well as the fact that a defendant raises constitutional issues, does not operate as an "expansion either of defendant's right to be heard or his right to present evidence." *McHone*, 348 N.C. at 257, 499 S.E.2d at 762. Thus, any error in the trial court's omission does not affect the pertinent question of whether defendant was entitled to an evidentiary hearing.

Among the factors a defendant must prove to obtain a new trial on the basis of newly discovered evidence are: (1) "the evidence is material, competent and relevant"; (2) "the newly discovered evidence does not merely tend to contradict, impeach or discredit the testimony of a former witness"; and (3) "the evidence is of such a nature that a different result will probably be reached at a new trial." *State v. Garner*, 136 N.C. App. 1, 13, 523 S.E.2d 689, 698 (1999), *appeal dismissed and cert. denied*, 351 N.C. 477, 543 S.E.2d 500 (2000).

Applying these principles here, defendant's motion does not entitle him to relief on this ground because defendant cannot establish that, even if true, the newly discovered evidence would have changed the result at trial. Regardless of whether Shumpert was armed at the time of the shooting, defendant testified that he never saw a gun or other weapon on Shumpert. Thus, the reality of whether Shumpert was actually armed is irrelevant to the issue of self-defense, which is examined from the point of view of the defendant. *See State v. Williams*, 342 N.C. 869, 873, 467 S.E.2d 392, 394 (1996) (essential question in self-defense is reasonableness of defendant's belief that deadly force is necessary). Moreover, to the extent defendant sought to discredit Holiday's testimony that Shumpert was unarmed, this is not a proper basis for granting a motion on the grounds of newly discovered evidence. *See Garner*, 136 N.C. App. at 13, 523 S.E.2d at 698. We therefore disagree with defendant that this newly discovered evidence, even if true, would have had the necessary bearing on his trial to warrant the grant of a new trial.

We likewise disagree with defendant that his claim for ineffective assistance of counsel mandated an evidentiary hearing. Defendant maintained in his motion that his counsel was deficient in two respects: (1) in failing to call a particular witness; and (2) in failing to strike a juror who allegedly knew defendant from school and disliked him. In order to successfully assert an ineffective assistance of counsel claim, a defendant must establish the following: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that his counsel's performance deficiency was so serious that a reasonable probability exists that the result of the trial would have been different. *State v. Gainey*, 355 N.C. 73, 112, 558 S.E.2d 463, 488 (2002). "There is a presumption that trial counsel acted in the exercise of reasonable professional judgment." *Id.*

In *State v. Aiken*, 73 N.C. App. 487, 326 S.E.2d 919, *appeal dismissed and disc. review denied*, 313 N.C. 604, 332 S.E.2d 180 (1985),

we held that the trial court properly denied, without a hearing, the defendant's motion for appropriate relief based on ineffective assistance of counsel where the defendant failed to produce any supporting affidavits or other evidence beyond the bare assertions of the motion. *Id.* at 500-01, 326 S.E.2d at 927. The defendant based his claim on the fact that his attorney failed to move to suppress the defendant's statement to police and to contact various defense witnesses. *Id.* We observed that N.C. Gen. Stat. § 15A-1420(c)(6) requires that a defendant seeking relief by a motion for appropriate relief " 'must show the existence of the asserted ground for relief.' " *Id.* at 501, 326 S.E.2d at 927 (quoting N.C. Gen. Stat. § 15A-1420(c)(6)). Thus, where the defendant did not comply with N.C. Gen. Stat. § 15A-1420(c)(6) by failing to file anything but bare assertions that his counsel was ineffective, "the trial court's summary denial of the motion for appropriate relief was not error." *Id.*

Our Supreme Court has also stated that the rules which govern "the procedure for filing a motion for appropriate relief clearly require[] supporting affidavits to accompany the motion." *State v. Payne*, 312 N.C. 647, 668, 325 S.E.2d 205, 219 (1985). The Court observed that aside from subsection (c)(6), N.C. Gen. Stat. § 15A-1420(b)(1) provides that motions for appropriate relief made after the entry of judgment " 'must be supported by affidavit or other documentary evidence if based upon the existence or occurrence of facts which are not ascertainable from the records and any transcript of the case or which are not within the knowledge of the judge who hears the motion.' " *Id.* at 669, 325 S.E.2d at 219 (quoting N.C. Gen. Stat. § 15A-1420(b)(1)).

The record in this case reveals that defendant failed to file any affidavits or other evidence to support his assertions that counsel was ineffective. According to *Aiken*, such failure supports the trial court's summary denial of defendant's motion. In any event, as we noted in *Aiken*, decisions such as which witnesses to call, whether and how to conduct examinations, which jurors to accept or strike, and what trial motions should be made are strategic and tactical decisions that are within the " 'exclusive province' " of the attorney. *Aiken*, 73 N.C. App. at 496, 326 S.E.2d at 924 (citation omitted). " 'Trial counsel are necessarily given wide latitude in these matters. Ineffective assistance of counsel claims are not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness.' " *Id.* (citation omitted). Defendant's bare assertions in his motion are insufficient to show that his attorney's

decisions with respect to which jurors to strike and which witnesses to call were anything but proper tactical decisions within the range of professionally reasonable judgment. *See State v. Campbell*, 142 N.C. App. 145, 152, 541 S.E.2d 803, 807 (2001) ("[w]here the strategy of trial counsel is 'well within the range of professionally reasonable judgments,' the action of counsel is not constitutionally ineffective" (citation omitted)).

No error.

Judges GREENE and TIMMONS-GOODSON concur.