An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-514

Filed 3 September 2025

Lincoln County, Nos. 21 CRS 052057

STATE OF NORTH CAROLINA

v.

JOHN LEE BROOKS, Defendant.

Appeal by Defendant from judgment entered 26 October 2023 by Judge Todd Pomeroy in Lincoln County Superior Court. Heard in the Court of Appeals 30 January 2025.

> *Attorney General Jeff Jackson, by Solicitor General Fellow Kaeli E. Czosek, for the State.*

> *Cooley Law Office, by Attorney Craig M. Cooley, for defendant-appellant.*

STADING, Judge.

John Lee Brooks ("Defendant") appeals from final judgment entered upon a jury verdict convicting him of second-degree rape. After careful review, we discern no error.

## I.   Background

The Lincoln County Grand Jury indicted Defendant for second-degree rape. Defendant's trial commenced on 23 October 2023, and the evidence tended to show

Defendant and the victim, Samantha,[1] had an on-and-off relationship for a span of five years. Although Samantha ended the relationship in September 2018, the two remained in contact concerning Samantha's repayment of a personal loan by Defendant. In June 2019, Samantha received an email from Defendant to check on Samantha's most recent relationship breakup. The two began talking again and working out together. Around the same time the friendship was reestablished, Samantha began dating her current husband.

A few months into this rekindled friendship, Defendant told Samantha that his friend, Johntae Williams, was interested in dating Samantha's friend. Defendant asked Samantha if she and her friend would accompany him and Williams to see a movie. Samantha agreed, conditioned upon returning home the same night since her son's birthday was the next day. Samantha's friend canceled her plans to go with the group to the movie. Nonetheless, Defendant, Samantha, and Williams decided to go to the movie since Williams had taken work off that day. The group met at the Hampton Inn in Lincolnton and took Defendant's car to the movie theater in Charlotte.

After the group ordered drinks in the theater lobby, Defendant insisted on ordering another round for everyone. Defendant returned to the theater and placed a drink in front of Samantha. Defendant then placed money on the table and "bet"

---

[1] A pseudonym is used to protect the identity of the sexual assault victim.

Samantha to finish the drink. At first, Samantha declined, but after Defendant offered her more money, she accepted and finished the drink.

Samantha testified that she remembered nothing from the rest of the night after consuming the second drink that Defendant encouraged her to consume. Video evidence introduced by the State showed Defendant carrying Samantha into the Hampton Inn after the movie. Samantha remembered waking up the next morning without clothes in a hotel room. Defendant was in the room with Samantha. The general manager testified that as Samantha left the next morning, she looked "very wobbly," had her hair down in her face, and appeared "out of it," as Defendant led her out of the hotel lobby.

When Defendant took Samantha home, Samantha's mother observed that she seemed "disoriented," acting "incoherent, not herself at all." Upon seeing Samantha's bloodshot eyes, her mother asked Defendant what was wrong with Samantha. Defendant made a hand motion to signal that Samantha had been drinking. When Defendant left the home, Samantha explained to her mother the circumstances of how she woke up. Samantha's mother described her as acting like someone who had "a stroke." Her mother also testified that "there was no white in [Samantha's] eyes." In response, Samantha's mother immediately took her to the hospital for administration of a rape kit. That test revealed "[t]he DNA profile obtained from fraction two of the vaginal swabs (Item 1-2) is approximately 11.2 nonillion times more likely if it originated from [Samantha] . . . and [Defendant] . . . than if it

originated from [Samantha] . . . and an unknown, unrelated individual." Samantha testified that she was not released from the hospital until she was fully conscious and could eat, which was not until 8:00 p.m.

Samantha and Defendant had a text message exchange discussing the incident. Samantha accused Defendant of rape, and he denied the accusation. During the text exchange, Defendant stated, the "only one who had pills n drinks together was me in my soda . . . only way anything I took was in ya stuff was if you drunk any of my drinks[.]" He added, "u never got drugged I wouldn't do that to have sex with u[.]"

After the State's evidence, Defendant moved to dismiss for insufficient evidence. The trial court denied Defendant's motion. At the close of all evidence, Defendant renewed his motion to dismiss. The trial court again denied Defendant's motion. The jury found Defendant guilty of second-degree rape, and the trial court sentenced him to 73 to 148 months in the Department of Adult Correction. Defendant entered his notice of appeal.

## II.  Jurisdiction

This Court has jurisdiction over Defendant's appeal pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) ("From any final judgment of a superior court . . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

### III.  Analysis

Defendant challenges the trial court's denial of his motion to dismiss, alleging the State failed to adduce sufficient evidence that Samantha was "physically helpless" during intercourse.  Defendant also asserts the trial court committed plain error by failing to intervene ex mero motu when the State elicited testimony of Defendant's pre-arrest silence, thereby violating his constitutional right against self-incrimination.  Last, Defendant argues his trial counsel rendered ineffective assistance of counsel ("IAC") by failing to object to the testimony of a witness who referenced his pre-arrest silence.  After careful consideration, we hold the trial court did not commit error.

### A. Motion to Dismiss

Defendant maintains the trial court committed error by denying his motion to dismiss because "the [S]tate failed to present substantial evidence that the vaginal intercourse occurred while Samantha was physically helpless."  Specifically, Defendant argues that although there was substantial evidence he and Samantha had intercourse and Samantha was physically helpless when she had to be carried in the hotel, the State nonetheless failed to prove the intercourse happened while she was physically helpless.  We disagree.

"[T]he denial of a motion to dismiss for insufficiency of the evidence is a question of law reviewed *de novo* by this appellate court."  *State v. Kennedy*, 276 N.C. App.  381, 383, 856 S.E.2d 893, 896 (2021) (quoting *State v. Barnett*, 368 N.C. 710,

713, 782 S.E.2d 885, 888 (2016)). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation omitted). "A motion to dismiss is properly denied where there is substantial evidence of each element of the offense charged and of [the] defendant being the perpetrator of that offense." *State v. Steele*, 281 N.C. App. 472, 476, 868 S.E.2d 876, 880 (2022) (brackets in original) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Parker*, 233 N.C. App. 577, 579, 756 S.E.2d 122, 124 (2014) (citation omitted).

> In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances.

*State v. Ingram*, 283 N.C. App. 85, 88, 872 S.E.2d 148, 150 (2022) (citation omitted).

Second-degree forcible rape occurs if the defendant engages in vaginal intercourse with the victim:

> (1) By force and against the will of the other person; or
>
> (2) Who has a mental disability or who is mentally

> incapacitated or physically helpless, and the person performing the act knows or should reasonably know the other person has a mental disability or is mentally incapacitated or physically helpless.

N.C. Gen. Stat. § 14-27.22 (2023). A victim is "[p]hysically helpless" when: (1) "unconscious"; or (2) "physically unable to resist an act of vaginal intercourse or a sexual act or communicate unwillingness to submit to an act of vaginal intercourse or a sexual act." N.C. Gen. Stat. § 14-27.20(3). The fact that a defendant "knew or reasonably should have known the victim's condition" of physical helplessness and still engaged in the "physical act of vaginal intercourse with the victim while she is physically helpless is sufficient 'force' for the purpose of second degree rape[.]" *State v. Aiken*, 73 N.C. App. 487, 499, 326 S.E.2d 919, 926 (1985).

Here, the evidence viewed in a light most favorable to the State is sufficient for the jury to determine whether Defendant engaged in vaginal intercourse with Samantha while she was physically helpless. Samantha testified she had lost her memory after consuming the drink Defendant encouraged her to finish. Video evidence introduced by the State showed Defendant carrying Samantha into the hotel after the movie. Samantha did not remember anything until waking up the following morning in Defendant's hotel room. The general manager of the Hampton Inn testified that Samantha was "very wobbly" and "out of it" when she left the hotel. Samantha's mother testified that Samantha got home in the morning, had bloodshot eyes, was incoherent, had muffled speech, and appeared as if she had a stroke.

Samantha also testified that she was not released from the hospital until she was fully conscious, which was not until 8:00 p.m.

Citing *State v. Eldred*, Defendant maintains the State's evidence amounts to mere conjecture. 259 N.C. App. 345, 815 S.E.2d 742 (2018). In *Eldred*, the defendant was charged with driving while impaired and moved to dismiss for insufficient evidence of "impairment *while* he was driving." *Id.* at 347, 815 S.E.2d at 744. A prior panel from our Court held the defendant's motion to dismiss was improperly denied since the State failed to adduce sufficient evidence "that [the defendant's] admitted impairment began before or during the time he was operating his vehicle." *Id.* at 345, 815 S.E.2d 742 at 743. The Court determined the record contained no evidence permitting a jury to infer the defendant was driving while impaired. *Id.* Holding the motion to dismiss should have been allowed, the Court reversed the defendant's conviction since "the facts and circumstances warranted by the evidence [did] no more than raise a suspicion of guilt," and were "insufficient to make out a case." *Id.* at 350, 815 S.E.2d at 746 (citing *State v. Blizzard*, 280 N.C. 11, 16, 184 S.E.2d 851, 854 (1971)).

Defendant's attempt to analogize *Eldred* to the present matter falls far short of providing a basis to dismiss the second-degree rape charge. The testimony offered at trial is sufficient to overcome the conjecture question since the jury could reasonably infer: Samantha lost her memory after consuming the drink given to her by Defendant; after regaining her memory after the night in question, Samantha

awoke in a hotel room with Defendant; Defendant's DNA was revealed after Samantha received a rape kit test; and Samantha testified to not having consensual intercourse with Defendant. Sufficient evidence was presented for a jury to infer Samantha was either unconscious or physically unable to resist an act of intercourse during the night in question. *See State v. Lee*, 213 N.C. App. 392, 396, 713 S.E.2d 174, 177–78 (2011) (quotation marks and citations omitted) ("[C]ircumstantial evidence is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant. . . . It is for the jury to weigh the evidence."). We hold, "in the light most favorable to the State, giving the State the benefit of all reasonable inferences," it provided substantial evidence of each element of the offense charged from which the jury could conclude Defendant had vaginal intercourse with Samantha while he knew or should have known she was physically helpless. *Ingram*, 283 N.C. App. at 88, 872 S.E.2d at 150; *Steele*, 281 N.C. App. at 476, 868 S.E.2d at 880. The trial court properly denied Defendant's motion to dismiss.

## B. Defendant's Right Against Self-Incrimination

Defendant next argues that the trial court erred because it did not intervene, ex mero motu, when Detective Houser testified that she spoke with Defendant "several times" and asked him to submit to an interview "several times." Defendant claims such an error would violate his right against self-incrimination under both the United States and North Carolina Constitutions. Specifically, Defendant maintains that because the State's case relied mostly on circumstantial evidence, Detective

Houser's testimony carried considerable weight to the jurors which "probably impacted" the jury's decision to convict. We disagree.

During the State's direct examination of Detective Houser, the following exchange ensued:

> [Prosecutor:] And how many times approximately did you speak with [Defendant]?
>
> [Detective Houser:] Several Times.
>
> [Prosecutor:] Did he ever come in for an interview?
>
> [Detective Houser:] No, he did not.

Defendant did not object to the challenged portion of the State's testimony referencing his unwillingness to speak with law enforcement officers; thus, this issue is unpreserved for appellate review. *See* N.C. R. App. P. 10(a)(1) (requiring "a timely request, objection or motion" to preserve an issue for appellate review). The standard of review for evidence admitted without objection is plain error. *State v. Houser*, 239 N.C. App. 410, 415, 768 S.E.2d 626, 630 (2015). To demonstrate plain error, "a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks and citations omitted). "Probable impact" encompasses more than just a *possibility* the jury would have

reached a different result; the defendant must show "the jury *probably* would have returned a *different* verdict." *State v. Reber*, 386 N.C. 153, 162, 900 S.E.2d 781, 789 (2024) (first emphasis added). Since "plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

Here, even if the trial court's decision to not intervene during the contested line of questioning constitutes error, Defendant cannot show such error "had a probable impact on the jury's finding that [he] was guilty." *Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334. The record contains more than sufficient evidence to preclude Defendant from clearing the plain error hurdle: Samantha's testimony that she did not remember anything after her second drink; Samantha's mother's testimony of her observations of her daughter; physical evidence of the presence of Defendant's DNA on the vaginal swabs taken from Samantha; video evidence showing Defendant carrying Samantha to the hotel room; and the general manager's testimony of Samantha's appearance when leaving the hotel. Defendant cannot show "the jury probably would have reached a different result" without the contested portion of Detective Houser's testimony. *Reber*, 386 N.C. 161, 900 S.E.2d at 788. Defendant's contention that the State's circumstantial evidence is "weak" does not bear out here. *See State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2018) (citations omitted) ("[T]he test of the sufficiency of the evidence . . . is the same

whether the evidence is direct, circumstantial, or both."); *see also State v. Haselden*, 357 N.C. 1, 18, 577 S.E.2d 594, 605 (2003) ("Circumstantial evidence may be sufficient to support a conviction even when 'the evidence does not rule out every hypothesis of innocence.'"). Accordingly, we overrule Defendant's argument.

## C. Ineffective Counsel

Defendant last asserts that he received ineffective counsel at trial. Defendant contends that his trial counsel performed deficiently by failing to object to Detective Houser's testimony contested in the previous section. We disagree.

The standard of review for an IAC claim is *de novo*. *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894 (2014). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Kennedy,* 276 N.C. App. at 383, 856 S.E.2d at 896 (quoting *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294).

Reversal of a conviction for IAC requires a defendant to show: (1) counsel's performance was deficient, meaning the errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced him, meaning the errors were so serious as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine

whether counsel's performance was actually deficient." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 248. To show prejudice, Defendant must show "a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 (emphasis added). "The prejudice standard for ineffective assistance claims is lower [than plain error review]—the defendant need only show a reasonable probability that absent the error the jury would have reached a different result." *See Reber*, 386 N.C. at 166, 900 S.E.2d at 791 (citation and internal quotation marks omitted).

Yet here, even when considering the lower standard, the record evidence recited in the preceding section precludes Defendant from satisfying the prejudice prong of the *Strickland* test. 466 U.S. at 687, 104 S. Ct. at 2064. In the face of the DNA evidence, video evidence, and testimonies, Defendant cannot show a reasonable probability that, absent the alleged error by counsel, the result of the trial would have been different. *Id.* at 694, 104 S. Ct. at 2068.

## IV.  Conclusion

We hold that the trial court committed no error when ruling on Defendant's motion to dismiss. We also hold that no error was committed regarding the court declining to intervene ex mero motu. Finally, we hold that Defendant cannot demonstrate the prejudice required to sustain his IAC claim.

NO ERROR.

Judges HAMPSON and FLOOD concur.

Report per Rule 30(e).