WATERMAN, Justice
(concurring specially).
I join the majority’s well-reasoned opinion except for Part III.D.2, addressing the *837 prosecutor’s use of the word “victim” in her closing argument. On that issue, I join the special concurrence of Justice Mansfield. I write separately to respond to the special concurrences of Justice Wiggins and Justice Appel that would require judges to give a jury instruction on implicit bias. Although I might decide to use such an instruction if I were a trial judge, I do not believe our court has enough information at this point to mandate such an instruction statewide whenever there is a defendant from a racial minority. Furthermore, no cases have been cited to us requiring trial courts to instruct on implicit bias. To date, all appellate courts addressing the question have confirmed that trial courts have discretion whether to instruct the jury on racial bias. I agree with our court’s majority that the district court had discretion whether to give the implicit-racial-bias instruction, and the omission of that instruction did not prejudice Kelvin Plain.
Just this year, the United States Court of Appeals for the Eighth Circuit held that a trial court was not required to instruct on implicit racial bias in a criminal case. United States v. Graham, 680 Fed.Appx. 489, at 491 (8th Cir. 2017) (per curiam). The jury convicted Fredrick Graham of being a felon in possession of a firearm. Id. at 490. He offered a proposed instruction to “counteract the jurors’ ‘implicit bias’ and ‘unconscious racial attitudes.’” Id. at 491. Like the instruction requested by Plain, Graham’s instruction “directed the jurors to reach their verdict ‘without discrimination’ and without ‘considering Graham’s] race, color, religious beliefs, national origin, or sex.’” Id. (alteration in original). The trial court declined to give the instruction, and the Eighth Circuit affirmed, stating,
Graham next argues that the district court abused its discretion by declining to give his proposed instruction on implicit racial bias. We disagree. A district court has broad discretion to formulate jury instructions. We review jury instructions as a whole and affirm if they “fairly and adequately submitted the issues to the jury.” The district court’s instructions fairly informed the jury of the essential elements of the offense charged, as well as of the government’s burden of proof. Additionally, the instructions specifically directed the jury that it should “not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.” The district court did not abuse its discretion by declining to give Graham’s proposed instruction.
Id. at 492-93 (citations omitted) (quoting United States v. Farish, 535 F.3d 815, 821 (8th Cir. 2008)).
Every other appellate court to reach the question has ruled similarly: trial courts have discretion to grant or to decline a party’s request to instruct the jury on racial bias. See United States v. Díaz-Arias, 717 F.3d 1, 23 (1st Cir. 2013) (concluding court’s instruction to be “fair-minded and impartial” encompassed defendant’s requested instruction on racial prejudice); People v. Williams, 211 Cal.Rptr.3d 1, 384 P.3d 1162, 1187 (2016) (holding “trial court did not err when it refused to give defendant’s requested instruction” to disregard race); People v. Smith, 30 Cal.4th 581, 134 Cal.Rptr.2d 1, 68 P.3d 302, 341 (2003) (noting court did not err in refusing to “instruct the jury to disregard his and the victim’s racial backgrounds”); State v. Roseboro, 351 N.C. 536, 528 S.E.2d 1, 13 (2000) (“[T]he trial court was not required to instruct the jurors that they should avoid giving any consideration to racial factors.... ”); State v. Richardson, 342 N.C. 772, 467 S.E.2d 685, 696 (1996) (con- *838 eluding defendant’s rights had not been violated when district court , refused to give proposed instruction on racial bias); see also Jahagirdar v. United States, 597 F.Supp.2d 198, 204 (D. Mass. 2009) (concluding defense counsel not unreasonable in failing to request racial-bias instruction because it “might unnecessarily draw attention to the racial differences between the defendant and. the alleged victim”).
In Smith, the defendant, an- African-American man, was convicted of kidnapping, raping, and murdering a female Japanese exchange student. 134 Cal.Rptr.2d 1, 68 P.3d at 312-13. He requested ah instruction that the jury was to “disregard his and the victim’s racial backgrounds” in its death penalty determination. Id., 134 Cal.Rptr.2d 1, 68 P.3d at 341. The California Supreme Court affirmed the district court’s refusal to give that instruction, stating,
[T]he instruction is not constitutionally required. Obviously, the jury may not consider the defendant’s or victim’s race in deciding whether to impose the death penalty.... But the court need not interject the issue of race itself and then tell the jury to disregard it, at least absent some indication the jury might improperly consider race.
Id. (citation omitted). The North Carolina Supreme Court similarly held the trial court was not required to give an implicit-bias instruction, noting the proposed instruction would , “in effect, inject[] racial bias into the jurors’ consideration of defendant’s sentence and divert[] their attention away from the more pertinent issues of defendant’s character and the circumstances of the crime.” Roseboro, 528 S.E.2d at 13. In Love v. State, our court of appeals observed,
No clear right or wrong approach to handling the issue of racial bias exists and even the need for courts and lawyers to -consider this, issue can be as troubling as the issue itself. It can project disturbing overtones when injected into the trial--, .proceedings due to the subtle impression that justice in a court of law in this country may turn upon skin color. - ...
543 N.W.2d 621, 624 (Iowa Ct. App. 1995).
In Díaz-Arias, the district court refused to provide the jury with, an instruction stating that it would be improper to consider “any personal feelings you may have about the defendant’s race or ethnicity, or national origin, ■ or his or any witness’ immigration status.” 717 F.3d at 22, Instead, the district court instructed that the jury should be “completely fair-minded and impartial, swayed neither by prejudice, nor sympathy, by personal likes or dislikes toward anybody involved.” Id. at 23. The First Circuit affirmed, concluding “Diaz-Arias’ proposed instruction was a more specific version of the court’s instruction; it merely recited the possible forms of prejudice that a person might have,..,. The court’s instructions effectively incorporated the essence of Diaz-Arias’ request.” Id.
I reach the samé conclusion here. Iowa jury instructions are to be read as a whole. Rivera v. Woodward Res. Ctr., 865 N.W.2d 887, 902 (Iowa 2015). The instructions to Plain’s jury made clear the verdict was to be based solely on the evidence. The concept that race should play no role in the verdict was thereby embodied in the instructions read as a whole. The jury instructions stated,
■ You shall base your verdict only upon the evidence and these instructions.
Evidence is:
1. Testimony in person or
2. Exhibits received by the Court. You may examine the exhibits closely, but be careful not to alter or destroy them.
*839 3. Stipulations entered into by the parties.
Jurors were instructed to “decide the facts from the evidence” and determine witness credibility based on race-neutral criteria, such as “whether testimony [was] reasonable and consistent with other evidence,” “whether ... witnesses] ha[d] made inconsistent statements,” witness “appearance, conduct, age, intelligence, memory, and knowledge of the facts,” and the wit: nesses’ “interest in the trial, their motive, candor, bias, and prejudice.” The instructions told the jury the defendant was to be presumed “innocent and not guilty” and that jurors must “put aside all suspicion which might arise from the arrest, charge, or the present situation of the defendant.” The jury was further instructed to decide the case based on its “impartial consideration of the evidence.” Finally, the instructions stated, “Remember, you are the judges of the facts. Your sole duty is to find the truth and do justice.”
We presume the jury follows the court’s instructions. State v. Hanes, 790 N.W.2d 545, 552 (Iowa 2010). As the Supreme Court has stated, “[T]here is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups,” Rosales-Lopez v. United States, 451 U.S. 182, 190, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22 (1981).
I do not question the proposition that all of - us in the judicial system—including judges, jurors, and attorneys—are subject to many different forms of implicit bias. Racial bias may be the .most persistent form of implicit bias. But it is one thing to say that implicit bias is a problem. It is another thing, to mandate a special jury instruction on implicit bias as the designated solution to that problem. In my view, more research is needed before we substitute our judgment concerning such an instruction for that of our trial judges. Justice Appel’s concurrence cites “strong scientific evidence of the existence of implicit bias” but, at the same time, dismisses the need for “social science evidence demonstrating utility” of an implicit-bias jury instruction. That reasoning is incongruous. We do not look for social science to prove the efficacy of jury instructions that simply set forth the applicable law or elements or a claim or défense. But when social science is the basis for a jury instruction, as it would be for one on implicit bias, some degree of social science support for the instruction is required. Yet no empirical study has been cited that an implicit-bias jury instruction improves juror decision-making. That dearth of support gives me pause. -
The district court noted the absence of a uniform jury instruction on implicit racial bias;[14] United States District Court Judge *840 Mark W. Bennett has thoroughly studied ways to address implicit biases and uses this jury instruction before opening statements in all his civil and criminal trials:
As we discussed in jury selection, growing scientific research indicates each one of us has “implicit biases,” or hidden feelings, perceptions, fears and stereotypes in our subconscious. These hidden thoughts often impact how we remember what we see and hear and how we make important decisions. While it is difficult to control one’s subconscious thoughts, being aware of these hidden biases can help counteract them. As a result, I ask you to recognize that all of us may be affected by implicit biases in the decisions that we make. Because you are making very important decisions in this case, I strongly encourage you to critically evaluate the evidence and resist any urge to reach a verdict influenced by stereotypes, generalizations, or implicit biases.
Mark W. Bennett, Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, The Failed Promise of Batson, and Proposed Solutions, 4 Harv. L. & Pol’y Rev. 149, 169 n.85 (2010); see also Cynthia Lee, Making Race Salient: Trayvon Martin and Implicit Bias in a Not Yet Post-Racial Society, 91 N.C. L. Rev. 1555, 1598-99 (2013) (collecting examples of model or pattern jury instructions on implicit bias).
As Justice Appel, concedes, the studies are inconclusive. One scholar cautioned that “instructing jurors to ignore the defendant’s race might exacerbate the effect of race upon guilt attribution.” Sheri Lynn Johnson, Black Innocence and the White Jury, 88 Mich. L. Rev. 1611, 1679 (1985) (noting that “because the process involved is probably unconscious for most jurors, instructing them to put racial prejudice out of their minds or to ignore the defendant’s race in assessing the evidence is unlikely to be productive”); see also Ashok Chan-dran, Color in the “Black Box”: Addressing Racism in Juror Deliberations, 5 Co-luro. J. Race & L. 28, 43 (2015) (“The effects of bringing racial bias up are unpredictable at best; often, such questioning will simply draw more attention to the defendant’s race or ethnicity, increasing the effect of race on the trial.”).
“[I]f handled inappropriately, bias-reduction efforts can backfire.” Anna Roberts, Reclaiming the Importance of the Defendant’s Testimony: Prior Conviction Impeachment and the Fight Against Implicit Stereotyping, 83 U. Chi. L. Rev. 835, 872 & n.230 (2016) (surveying studies). Other studies suggest that implicit-bias in *841 structions may be effective because they “continue[ ] the process of awareness-raising that [is] started during the voir dire process.” Jonathan A. Rapping, Implicitly Unjust: How Defenders Can Affect Systemic Racist Assumptions, 16 N.Y.U. J. Legis. <& Pub. Pol’y 999, 1040 (2013); see also Elizabeth Ingriselli, Mitigating Jurors’ Racial Biases: The Effects of Content and Timing of Jury Instructions, 124 Yale L.J. 1690, 1730 (2015) (finding that combination of race salience and egalitarian instructions may reduce bias); Casey Reynolds, Implicit Bias and the Problem of Certainty in the Criminal Standard of Proof, 37 L. & Psychol. Rev. 229, 243 (2013) (suggesting people can “compensate for implicit bias when they are aware of it” by purposely being more fairminded); Samuel R. Sommers & Phoebe C. Ells-worth, White Juror Bias: An Investigation of Prejudice Against Black Defendants in the American Courtroom, 7 Psychol. Pub. Pol’y & L. 201, 220 (2001) (“White jurors are more likely to demonstrate racial prejudice in cases without salient racial issues.”). Finally, studies have noted the dearth of empirical work showing that implicit-bias instructions help. See Jerry Kang et al., Implicit Bias in the Courtroom, 59 UCLA L. Rev. 1124, 1184 (2012) (“That said, no experiment has yet been done on whether jury instructions specifically targeted at implicit bias are effective in real-world settings.”). In fact, the first published study to investigate the effects of jury instructions failed to demonstrate any significant influence on jurors’ verdict preferences. Jennifer K. Elek & Paula Hannaford-Agor, Nat’l Ctr. for State Cts., Can Explicit Instruction Reduce Expressions of Implicit Bias? New Questions Following a Test of a Specialized Jury Instruction 14 (Apr. 2014) (finding instructions on implicit bias had “no significant effects ... - on judgments' of guilt, confidence,- strength of the prosecution’s evidence, or sentence length”).
In 2015, the American Bar Association began a project with the intent of developing a jury instruction on implicit bias as its “centerpiece.” Am. Bar Ass’n, Achieving an Impartial Jury (AIJ) Toolbox 15 (2015) [hereinafter AIJ Toolbox]. However, it ultimately concluded that “the drafting of such language was challenging” and “fundamental questions were raised as to whether a judge’s highlighting of the notion of implicit bias would do more harm than good.” Id. In the end, the ABA simply offered a “toolbox,” that is, “a variety of approaches ... as possibilities for judges desiring to use this kind of instruction.” Id. at 16. In other words, far from mandating any particular instruction, as the special concurrences would, the ABA supports leaving the matter to individual judges. I agree.
To illustrate the lack of consensus as to content and timing even among the supporters of a mandatory instruction, consider the present case. Here, defense counsel asked for an instruction after the close of evidence that directly mentions race, while Justice Appel’s special concurrence would require some instruction to be given during jury selection, and Judge Bennett gives his instruction, which does not mention race, before opening statements. See Bennett, 4 Harv. L. & Pol’y Rev. at 169 n.85.
We have required all Iowa judges to undergo implicit-bias training and testing. But I would not require courts to give an implicit-bias jury instruction without further research and study. For now, like the majority, I leave it to: the trial judge’s discretion whether to instruct separately on implicit bias.
' Mansfield and Zager, JJ., join this special concurrence;

. Plain's jury trial was in October. 2015. The following June, the Iowa State Bar Association Jury Instruction Committee proposed changes to Uniform Criminal Jury Instruction • 100.8 to include language concerning juror biases. The instruction now reads,
100.8 Consideration of Instructions. You must determine whether the defendant is guilty or not guilty from the evidence and the law in these instructions. My duty is to tell you what the law is. Your duty is to accept and apply this law and to decide all fact questions.
You must consider all of the instructions together. No one instruction includes all of the applicable law.
As you consider the evidence, do not be influenced by tiny personal sympathy, bias, prejudices or emotions. Because you are maldng very important decisions in this case, you are to evaluate the evidence carefully and avoid decisions based on generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your reason • and common sense, and these instructions.
*840 As jurors, your sole duty is to find the truth and do justice.
Iowa State Bar Ass’n, Iowa Criminal Jury Instruction 100.8 (2016). A similar change was made to Uniform Civil Jury Instruction 100.2 which now reads,
100.2 Duties of Judge and Jury, Instructions as Whole. My duty is to tell you what the law is. Your duty is to accept and apply this law.
You must consider all of the instructions together because no one instruction includes all of the applicable law.
The order in which I give these instructions is not important.
Your duty is to decide all fact questions.
As you consider the evidence, do not be influenced by any personal sympathy, bias, prejudices or emotions. Because you are making very important decisions in this case, you are to evaluate the evidence carefully and avoid decisions based on generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your reason and common sense, and these instructions. As jurors, your sole duty is to find the truth and do justice.
Iowa State Bar Ass’n, Iowa Civil Jury Instruction 100.2 (2016).